COMMONWEALTH OF PUERTO RICO, Plaintiff,

v.

Richard S. SCHWEIKER, et al., Defendants.

DISTRICT OF COLUMBIA, Plaintiff,

v.

Richard S. SCHWEIKER, et al., Defendants.

Civ. A. Nos. 82–2695, 82–2746.

United States District Court, District of Columbia.

Oct. 27, 1982.

Philip A. Lacovara, Hughes, Hubbard & Reed, Washington, D.C., for Puerto Rico.

Martin L. Grossman, Asst. Corp. Counsel, District of Columbia, Washington, D.C., for District of Columbia.

Judith Bartnoff, Asst. U.S. Atty., Washington, D.C., for Puerto Rico and District of Columbia.

MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

These are actions by the Commonwealth of Puerto Rico and the District of Columbia challenging the decision of the Secretary of Health and Human Services to deny those jurisdictions certain funding for health care planning on the ground that the definition of "state" in the law rendering qualified states eligible for such funding embraces only the 50 states and excludes plaintiffs. The funds that are the subject of these actions have been protected from disbursement by the Court's Order of September 24, 1982, in accordance with a stipulation of the parties to Civil Action No. 82–2695.[1] The

---

1. On September 23, 1982 Puerto Rico's application (in Civil Action No. 82–2695) for a temporary restraining order enjoining the Secretary from disbursing the funds in dispute was argued and granted, and on September 24, 1982 counsel for defendants filed a stipulation whereunder defendants, in accordance with 31

U.S.C. § 665b, would preserve funds beyond the termination of the fiscal year on September 30, 1982 sufficient to provide Puerto Rico and others similarly situated (including the District of Columbia and territories and possessions of the United States) with the monies that they would be eligible to receive should Puerto Rico

parties for both sides in each action have moved for summary judgment, and those motions have been considered jointly. Upon consideration of the motions and supporting papers, for the reasons which follow the Court concludes that plaintiffs in each action shall prevail and that judgment shall be entered in their favor.

Under the National Health Planning and Resources Development Act of 1974, federal funding for health care planning was offered under the Public Health Service Act, 42 U.S.C. §§ 201 *et seq.*, at two levels. Section 1516 of the Public Health Service Act provided for grants to regional planning groups within the states called Health Systems Agencies (HSAs), while section 1525 provided for grants to statewide planning and development agencies. Because the state agencies were assigned responsibilities similar to those placed upon the HSAs, Congress recognized the possibility for conflict and duplication in small states with centralized health-care delivery systems. As such, section 1536 authorized the Secretary to recognize "single-agency states," which would be allowed to combine regional and statewide health planning operations in a single agency that would be entitled to receive funding through both section 1516 and section 1525. From the beginning, the District of Columbia has been eligible for a single-agency state designation under section 1536, and since 1977 has applied for and received funding from both grant sources. Puerto Rico was authorized to develop a single statewide health planning agency under the terms of section 1536 in 1979 by section 104(c) of the Health Planning and Resources Development Amendments of 1979, Pub.L. No. 96–79, 93 Stat. 592, 596. It received from the Secretary a conditional designation in 1980 and, in 1981, a full designation for single-agency status. In both 1980 and 1981 Puerto Rico's single statewide agency received full funding under both section 1516 and section 1525.

When Puerto Rico and the District of Columbia applied for HSA funding under section 1516 for fiscal 1982, the Secretary refused to grant such funds because of certain language in the Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35, 95 Stat. 357 (Budget Act) which the Secretary read to limit eligibility for section 1516 funding to the 50 states of the Union. *See* Budget Act § 935, 95 Stat. at 571. Puerto Rico and the District of Columbia did, however, receive full statewide agency funding under section 1525 for fiscal 1982.

Section 935 of the Budget Act gave the Secretary the means to phase out HSA funding under section 1516 to section 1536 single-agency states, with the result that they would be eligible only for section 1525 (statewide) funds. Section 935(a) contains amendments to section 1536 that delete the single-agency states' eligibility for section 1516 funding. Sections 935(b) and (c) are grandfather clauses; they provide an extra year of section 1516 funding to those states that ultimately will lose their right to section 1516 funds because of section 935(a). Of these, only section 935(b), which allows former single-agency states to receive section 1516 funds for 1982 despite the phaseout, is relevant here. Section 935(c), the second grandfather clause, is not relevant to this case, as it does not involve single-agency states under section 1536 but states of small populations with only one HSA.

There is no doubt that, for purposes of section 1536, the District of Columbia is a "state". Section 1531 of the Public Health Service Act which governs section 1536, provides that, except as otherwise provided (and there are no relevant exceptions), "The term 'State' includes the District of Colum-

prevail on the merits of the case. In accordance with that stipulation, the Court entered an Order that date in the form proposed and consented to by counsel for Puerto Rico and counsel for defendants essentially extending the temporary restraining order until October 28, 1982. Thereafter, and pursuant to a briefing schedule set forth in the Order of September

24, 1982, the parties for each side in Civil Action No. 82–2695 moved for summary judgment. On September 29, 1982, the District of Columbia filed its complaint in Civil Action No. 82–2746, after which each of the parties therein filed motions for summary judgment, roughly in accordance with the briefing schedule in Civil Action No. 82–2695.

bia." Public Health Service Act § 1531(1), 42 U.S.C. § 300n(1). Moreover, section 1536 by its own terms provides that Puerto Rico and other enumerated possessions and territories, upon application and approval, "shall ... be considered to be a State for purposes of this title." Public Health Service Act § 1536, 42 U.S.C. § 300n–5.

However, while section 935(a) of the Budget Act amends section 1536 of the Public Health Service Act and therefore is controlled by the latter act's definitions, section 935(b) of the Budget Act is not part of the Public Health Service Act nor, consequently, (in defendants' view) subject to its broader definitions of "state". Moreover, the Budget Act contains no definition of "state" that expands beyond the 50 states.

Section 935(b) provides that:

(b) A state which—

(1) because of section 1536(b) of the Public Health Service Act (as in effect on September 30, 1981) received a grant under section 1516 of such Act for fiscal year 1981, and

(2) had an application under section 1536 of such Act (as amended by subsection (a)) approved,

shall be eligible to receive a grant under section 1516 of such Act of fiscal year 1982.

No party disputes that were Puerto Rico and the District of Columbia considered "states" under section 935(b) they would be eligible to receive a section 1516 grant for fiscal 1982. The sole question here is whether Congress meant the term "state" as it appears in the first line of section 935(b) to include plaintiffs.

Defendants point to language in the conference report accompanying the Budget Act in support of their view that Congress did not intend the definition of "state" governing section 935(a) to apply to section 935(b). The conference report explains that the amendment to section 1536 would allow a state to eliminate the federal designation and funding of HSAs (under section 1516) within a state, provided that the state could demonstrate its willingness and ability to carry out the purposes of the health plan-

ning program without the presence of HSAs within the state. It also noted that the conferees chose a certain date as the deadline for applications for section 1536 designations "in order to allow HSAs to receive their FY 82 grants without disruption of their established funding cycle." H.Conf.Rep. No. 208, 97th Cong., 1st Sess. 823, *reprinted in* 1981 U.S.Code Cong. & Ad.News 396, 1010, 1185. Immediately following—and this is the conference language upon which defendants rely for their position—the report continues:

The conference agreement provides for the states which currently have 1536 designations—Rhode Island and Hawaii—and states with less than 600,000 population and only one HSA—Vermont, Delaware and Wyoming—to share in funds appropriated in section 1516 for HSAs.

*Id.* Defendants assert that this language demonstrates Congress' intent that only the two states of the Union that had section 1536 designations in 1981, Rhode Island and Hawaii, would be eligible for section 1516 funds for 1982 under the section 935(b) grandfather provision, to the exclusion of other jurisdictions such as Puerto Rico and the District of Columbia which also had section 1536 designations in 1981.

The defendants' argument that the word "state" does not have the same meaning in section 935(b) as it does in section 935(a) requires them to overcome the "natural presumption that identical words used in different parts of the same act are intended to have the same meaning." *Atlantic Cleaners & Dyers, Inc. v. United States,* 286 U.S. 427, 433, 52 S.Ct. 607, 608, 76 L.Ed. 1204 (1932). "Given no expression of any contrary intent in the Act or in the legislative history regarding these definitions, we must assume that the meaning of a particular term is to be consistent throughout the Act." *Alabama Power Co. v. Costle,* 204 U.S.App.D.C. 51, 636 F.2d 323, 396 (1979) (Wilkey, J., concurring). Yet the only information that defendants submit toward overcoming that presumption is the language in the conference report referring to the statute's applicability to Rhode Island and Hawaii.

In considering defendants' suggestion that Congress intended the grandfather clause of section 935(b) to benefit Rhode Island and Hawaii but not the similarly-situated plaintiffs, the Court must examine whether this interpretation makes sense in light of the intended function of associated provisions, keeping mindful that "every part of a statute must be viewed in connection with the whole, so as to make all parts harmonize, if practicable, and give a sensible and intelligent effect to each ...." *General Motors Acceptance Corp. v. Whisnant,* 387 F.2d 774, 778 (5th Cir.1968), cited in *FTC v. Manager, Retail Credit Co.,* 169 U.S.App.D.C. 271, 515 F.2d 988, 994–95 (1975).

Plain logic does not support a finding that Congress had such an intention or that such an intention would be consistent with and meaningful in regard to the purposes of the Public Health Service Act or the Budget Act. Defendants direct the Court's attention to nothing in the legislative history of section 935 or of any other provision demonstrating an affirmative intent to exclude plaintiffs from their continued eligibility to receive these funds. They offer no reason why plaintiffs do not have the same need for relief under the grandfather clause that Rhode Island and Hawaii have. Defendants strain to find budgetary significance in the asserted decision to deny plaintiffs funding by suggesting that Congress' reduced allotment of HSA funds from previous levels made it necessary to decrease the number of jurisdictions receiving such funds in order for any recipient to receive a meaningful amount. This argument is unpersuasive. The Secretary's declaration that plaintiffs are not eligible for these funds has no effect whatsoever upon the total sum to be distributed; as such it supports no expressed congressional policy.

This case is similar to *Patagonia Corp. v. Board of Governors of the Federal Reserve System,* 517 F.2d 803 (9th Cir.1975). In *Patagonia,* the Court was faced with the question of whether the word "subsidiary" in a grandfather clause providing relief to "subsidiaries" had the same meaning as it did in the main part of the statute. The court considered the agency's arguments that, *inter alia,* grandfather clauses are to be construed narrowly and that agency interpretations of statutes are entitled to deference—arguments also advanced by defendants in the instant actions. It rejected those arguments after finding nothing in the legislative history to prove that the initial section's definition of "subsidiary" was not intended by Congress to apply to the same term in the grandfather clause. *Patagonia,* 517 F.2d at 810–13. As noted above, in the matter at hand there likewise is nothing in the legislative history that supports the intention that defendants would impute to Congress in the enactment of section 935; consequently, the Court is not persuaded by defendants' arguments as to the proper breadth of construction of grandfather clauses and as to the amount of deference to afford the agency's interpretation of the statute.

In deciding not to afford the Secretary's interpretation of the statute particular deference, the Court is aided further by the defendants' failure to assert that the agency actively participated in the drafting and adoption of the language in section 935. *Cf. Committee for Auto Responsibility v. Solomon,* 195 U.S.App.D.C. 410, 603 F.2d 992, 1004 (1979) (deference owed an agency's construction of a statute is heightened when the agency was actively involved in the drafting and adoption of the statutory language).

Throughout this exploration of the intended meaning and effect of the statute in question, what may well be the most important inquiry is as to what mischief the legislation was designed to prevent. *See Scott v. Moore,* 640 F.2d 708, 727 (5th Cir. 1981). *See also, e.g., Don't Tear it Down, Inc. v. Pennsylvania Avenue Development Corp.,* 206 U.S.App.D.C. 122, 642 F.2d 527, 533 (1980) (meaning of the statute is derived not from isolated portions but from a consideration of an entire enactment against the backdrop of its policies and objectives), and cases cited therein. The "mischief" that Congress was trying to prevent by enacting section 935(b) was, as noted

above, the "disruption of [the section 1536 jurisdictions'] established funding cycle." H.Conf.Rep. No. 208, 97th Cong., 1st Sess., at 823, *reprinted in* 1981 U.S.Code Cong. & Ad.News at 1185. The Secretary's reading of section 935(b) would make it certain that this very harm would befall the people of Puerto Rico and the District of Columbia.

In sum, there is no support in the history of the enactment of section 935 nor any other rational basis for the Secretary's declaration that plaintiffs were ineligible for the funding they seek.

The question of plaintiffs' eligibility for an award of attorney's fees will be reserved for consideration in the near future. Counsel will be advised as to what briefing, if any, may be required for the Court's determination of this issue.

In light of the foregoing, it is, by the Court, this 27th day of October, 1982,

ORDERED, that the motions for summary judgment of plaintiffs in Civil Action No. 82–2695 and Civil Action No. 82–2746 shall be and hereby are granted, and it is

FURTHER ORDERED, that defendants' motions for summary judgment in each of these actions shall be and hereby are denied, and it is

FURTHER ORDERED, that defendants, their agents, officers, employees, successors, and all persons in active concert or participation with them shall be and hereby are permanently restrained and enjoined from approving the further disbursement of section 1516 funds, as they have been identified in this Memorandum Opinion and Order, until plaintiffs have been granted all such funds to which they are entitled by law, in accordance with the Court's ruling and Judgment this date.

An appropriate Judgment shall be entered in each of these actions, contemporaneously with this Memorandum Opinion and Order, declaring that defendants have failed to administer properly the funding authorized by Congress under section 1516 of the Public Health Service Act for fiscal year 1982 by denying such funding to each plaintiff and that each plaintiff is entitled

to receive its proportionate share of section 1516 funding for fiscal year 1982, as authorized by section 1536 of the same Act.