**COMMONWEALTH OF PUERTO RICO**

v.

**Margaret M. HECKLER, Secretary of Health & Human Services, et al., Appellants.**

**No. 83–2136.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 17, 1984.

Decided Oct. 16, 1984.

Judith Bartnoff, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellants.

Peter A. Barnes, Washington, D.C., with whom Philip A. Lacovara, Washington, D.C., was on the brief, for appellee.

Before MIKVA, GINSBURG and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

This is a case about a $12,500 legal fee awarded by the district court under the "common fund doctrine." *Puerto Rico v. Heckler*, Civ. No. 82–2695 (D.D.C. May 18 & Aug. 26, 1983). It is "a second major litigation," *see Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed. 2d 40 (1983), a hard-fought contest following on the heels of a judgment requiring the payment of certain federal health planning grant funds to the Commonwealth of Puerto Rico and five other jurisdictions (American Samoa, Guam, the Trust Territory of the Pacific Islands, the U.S. Virgin Islands, and the Northern Mariana Islands). *Puerto Rico v. Schweiker*, 550 F.Supp. 472 (D.D.C.1982). The government charges fundamental error in the district court's award of any fee, and calculation error in that court's determination of the amount of the fee. We find no tenable basis for the government's opposition to the fee awarded, and affirm the district court's disposition in all respects.

## I. BACKGROUND

Before addressing the instant fee dispute, we describe summarily the antecedent litigation between Puerto Rico and the Secretary of the Department of Health and Human Services (Department or HHS) over grant funds for health planning. For several years prior to 1982, Puerto Rico and a number of smaller territories qualified for health planning funds under both section 1516 and section 1525 of the Public Health Service Act, 42 U.S.C. §§ 300*l*–5, 300m–4. These jurisdictions, and some small states of the United States, were designated "single-agency states"; they operated unitary health planning programs that combined functions performed in larger states by local agencies (eligible for grants under section 1516) and statewide

agencies (eligible for grants under section 1525).

In 1981, Congress decided to discontinue the eligibility of single-agency states for dual grants. Under the altered arrangement, single-agency states would qualify for section 1525 statewide grants, but not for section 1516 local grants. To ease the transition, Congress grandparented for fiscal year 1982 the single-agency "states" that had previously received dual funding. Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35, § 935(b), 95 Stat. 357, 571.

In applying the grandparent clause, the Department read the word "states" to mean only jurisdictions that were among the 50 states. That reading excluded Puerto Rico and similarly situated territorial units. When political efforts to obtain HHS reconsideration failed, and all of the section 1516 grant funds were about to be disbursed with nothing held back for United States jurisdictions that lacked statehood, Puerto Rico sought relief in court. The district court promptly held a hearing and granted a temporary restraining order. On consent of HHS, the interim order extended protection pendente lite to all affected jurisdictions. Proceeding with appropriate dispatch, the district court entertained cross motions for summary judgment and ruled in favor of Puerto Rico. Again with the Department's consent, the final judgment covered all similarly situated territorial units. Under the court's decree, Puerto Rico became entitled to some $600,000 in grant funds, and each of the smaller territories to $100,000.

Court consideration of fees for Puerto Rico's counsel had been deferred pending decision of the grant entitlement controversy. When Puerto Rico won that fray, the government opposed any use of grant funds for counsel fees, thus precipitating the matter now before us on review.

## II. COURT AUTHORITY TO AWARD A FEE

■ Under the American (more accurately, United States) rule, each side in a litiga-

tion bears its own legal fees. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). A principal exception to the rule, known as the "common fund doctrine," permits court-awarded fees when a litigation eventuates in a recovery not only for the complainant, but for a group of similarly situated others. *See, e.g., Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 392, 90 S.Ct. 616, 625, 24 L.Ed.2d 593 (1970). As the district court explained, this case fits comfortably in the "common fund" category: Puerto Rico's successful suit against HHS necessarily yielded health care funds for other, similarly situated, United States possessions and territories. The government, on appeal, does not contend otherwise.

■ Nor does sovereign immunity impede a fee award in this case. Prior to passage of the Equal Access to Justice Act (EAJA), Pub.L. No. 96–481, 94 Stat. 2325 (1980), the sovereign's traditional immunity precluded the award of an attorney's fee from government funds absent express congressional authorization; the preclusion sometimes arose even when, as in this case, the action created a "common fund" or conferred a common benefit. *See National Association of Farmworker Organizations v. Marshall*, 628 F.2d 23, 26–27 (D.C. Cir.1979). The EAJA, as the government acknowledges, Brief for Appellants at 14–15, waived the federal government's sovereign immunity for attorney's fee awards encompassed under common law exceptions to the American rule, including the "common fund" exception. 28 U.S.C. § 2412(b) (1982); *see* H.R. REP. No. 1418, 96th Cong., 2d Sess. 6, 9, 17, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4953, 4984, 4996; S.REP. No. 253, 96th Cong., 1st Sess. 1, 4 (1979). Under the regime Congress ordered in the EAJA, the government is today liable for counsel fees and expenses "to the same extent that any other party would be liable under the common law," unless government liability is "expressly prohibited by statute." 28 U.S.C. § 2412(b). To succeed in its opposition to

any "common fund" court-awarded counsel fee for Puerto Rico, therefore, the government must show an express statutory prohibition.

■ Initially, the government argues that the grant statute itself, section 1516 of the Public Health Service Act, 42 U.S.C. § 300*l*–5, prohibits the fee award because litigation to get a grant is not among the enumerated uses to which grant funds may be put. Uses specifically authorized in the statute, the government recites, are "compensation of agency personnel, collection of data, planning and the performance of the functions of the agency." Brief for Appellants at 15 (quoting 42 U.S.C. § 300*l*–5(a)). This argument is not reasonable. The litigation is what enabled Puerto Rico and other similarly situated jurisdictions to get the grant funds in the first place so that the money could be put to the enumerated uses. The authorized uses, in other words, sprang from, and would not have been possible without, Puerto Rico's investment in litigation. Under the circumstances, it defies common sense to read the statute as branding Puerto Rico's key, use-unlocking, expenses as "impermissible."

Fees under the common law exceptions to the American rule may be awarded against the sovereign under 28 U.S.C. § 2412(b), we repeat, unless "expressly prohibited by statute." We reject the

government's indiscriminate argument that, in the context of grants, if something is not expressly authorized, then inevitably it is expressly prohibited.[1] We have no reason to believe that Congress intended the government or the court to read 28 U.S.C. § 2412(b), in tandem with section 1516 of the Public Health Service Act, insensibly. On the contrary the remuneration of counsel whose efforts made the grant funds flow to the United States jurisdictions lacking statehood seems to us in full harmony with both statutes and with the public interests that prompted Congress to pass them.

The government additionally urges that regulations implementing section 1516 and OMB Circular A–87 "have the force and effect of law," Brief for Appellants at 17, and contain express prohibitions. We think Congress, in using the word "statute" in the 28 U.S.C. § 2412(b) phrase "expressly prohibited . by statute," meant to reserve express prohibitions to itself, not to remit the matter to executive regulation.[2] In any event, the regulations implementing section 1516 cited by the government simply follow the tracks of the statute; and the OMB Circular, as the district court pointed out, can be read to allow, not expressly prohibit, a fee award in the circumstances this case presents.[3]

---

1. Puerto Rico noted in the district court, and the government did not dispute, that the Secretary of HHS has recognized as permissible certain uses of

funds appropriated under Section 1516 for purposes not specifically enumerated in the statute or regulations. In particular, the Secretary apparently deducts from the total funds appropriated a sum to be used by his Department for program evaluation, and, on some occasions, an additional discretionary amount in order to reduce the total outlay by the Department. Neither of these purposes is expressly authorized by the language of section 1516....

See Plaintiff's Reply Memorandum in Support of Request For Attorney's Fees at 6 n.*, *Puerto Rico v. Heckler*, Civ. No. 82–2695 (D.D.C. May 18 & Aug. 26, 1983).

2. We do not mean to suggest that when Congress writes "statute" it can never mean "regulation." *Cf.* Cook, *"Substance" and "Procedure" in the Conflict of Laws*, 42 YALE L.J. 333, 337

(1933) ("The tendency to assume that a word which appears in two or more legal rules, and so in connection with more than one purpose, has and should have precisely the same scope in all of them, runs all through legal discussions. It has all the tenacity of original sin and must constantly be guarded against.").

3. The government underscores the Circular sentence disallowing "[l]egal expenses for the prosecution of claims against the Federal Government." Puerto Rico stresses the sentence allowing "[t]he cost of legal expenses required in the administration of grant programs." Expenses incurred solely to establish a jurisdiction's very right to receive grant funds may not have been in the mind of the Circular's drafters. They may have envisioned, as the district court indicated, principally monetary claims against the United States seeking sums other than amounts Congress specified for the grant program. *Heckler*, slip op. at 3–4 (May 18, 1983). It can be maintained, plausibly, that litigation leading

In sum, there is authority for, and no express statutory prohibition against, a counsel fee award for Puerto Rico. The district court did not err in holding Puerto Rico entitled to a fee contribution from the "common fund" that Puerto Rico's lawsuit made available to other jurisdictions.

### III. THE FEE CALCULATION

 Even if some fee is due, the government finally contends, the $12,500 awarded was improperly calculated. Because that total amount may be too high, the government argues, the case should be remanded for another round of litigation. We find no merit in the government's position on the computation and amount of the fee. The $12,500 award, we conclude, was properly calculated and is entirely reasonable.

Puerto Rico, in response to the district court's invitation for a fee award proposal, stated the arrangement it had made with counsel, and suggested an even allocation among the jurisdictions benefitted by the litigation. Counsel had undertaken to handle the case in the district court on the basis of agreed-upon hourly rates, subject to a maximum payment by Puerto Rico of $21,000 in fees and $3000 in disbursements. If the litigation succeeded and the court awarded a fee, counsel would recover the difference between the $21,000 cap and the value of the law firm's services at the agreed-upon rates, up to fifty percent of the award, and Puerto Rico could recoup part of the amount it had paid counsel. With this agreement in view, Puerto Rico

proposed that it receive $2500 from the $100,000 that otherwise would be distributed to each of the five territories, for a total court-awarded fee of $12,500. Under this arrangement each jurisdiction would contribute to the cost of the litigation 2.5 percent of the funds it received. (Puerto Rico's ultimate contribution would be $15,-000 against a grant of $600,000. Counsel would thus receive as remuneration a grand total of $27,500.)

In further support of the fee proposal, counsel for Puerto Rico documented that prior to May 1, 1983, they had expended 51.75 hours of partner time, 155 hours of associate time, and 25.75 hours of paralegal time.[4] In addition, counsel showed reimbursable expenses of $1121.34. The government did not contest the reasonableness of these time and money expenditures.

The district court, after providing for notice to, and receiving no objection from, the five jurisdictions affected,[5] determined that Puerto Rico's request was reasonable and appropriate in light of Puerto Rico's fee arrangement with its counsel, the $100,000 grant obtained for each of the other jurisdictions, and the proportionate (2.5 percent) contribution proposed as the share of each fund recipient. The government's protest rests on one alleged flaw or gap in the request: Puerto Rico did not specify any hourly rates; it did not show that the $12,500 proposal centered on *reasonable* time-based charges for the services rendered.[6]

---

to a judgment commanding an executive department to make grant funds available in the proper amount to the proper recipients involves program administration. But the issue is one we need not and do not decide.

Language in *Hamilton v. Northeast Kan. Health Sys. Agency,* 701 F.2d 860 (10th Cir.1983), offers surface support for the government's position. *Hamilton,* however, involved a request for fees for *unsuccessful* litigation. No "common fund" was generated and no other common law exception to the American rule was in point. The question therefore became whether any statute *authorized* a fee award under the circumstances, thereby overcoming the two formidable barriers that have been removed as impediments in this case: the American rule and the sovereign's immunity.

**4.** No compensation is claimed in this action for the many hours devoted to defense of the fee application in the district court and on appeal.

**5.** Only one of the five territories returned a written response to the notice. The Trust Territory of the Pacific Islands (TTPI) reported that it was "very appreciative of the legal proceedings initiated by the Commonwealth of Puerto Rico." "[I]n light of the benefits received," TTPI stated, it had "no objections" to the requested fees. Joint Appendix 43.

**6.** The government estimated from the fee request and the hours specification that the rates represented by the award might be "somewhat over $200 per hour for partners, $100 per hour for associates ... and $50 per hour for parale-

In fee determinations generally, as the government correctly observes, the normal starting point is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *see National Association of Concerned Veterans v. Secretary of Defense,* 675 F.2d 1319, 1323 (D.C.Cir.1982) (per curiam); *Copeland v. Marshall,* 641 F.2d 880, 891 (D.C.Cir. 1980) (en banc). Other indicia of overall reasonableness control, however, "under the 'common fund doctrine,' where a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson,* —— U.S. ——, 104 S.Ct. 1541, 1550 n. 16, 79 L.Ed.2d 891 (1984); *see Sprague v. Ticonic National Bank,* 307 U.S. 161, 166–67, 59 S.Ct. 777, 779–80, 83 L.Ed. 1184 (1939); Dawson, *Lawyers and Involuntary Clients: Attorney Fees from Funds,* 87 HARV.L.REV. 1597, 1625–26, 1652 (1974) (awarding fee under "common fund" theory rests on equitable principles designed to prevent unjust enrichment). Indicia of overall reasonableness are abundantly present here: the fee agreement that Puerto Rico, a sophisticated client, negotiated at arm's length with counsel placed a ceiling on compensation; the litigation conferred a considerable benefit on the jurisdictions involved; many hours were necessarily and properly devoted to the case; the total award was modest and represented a low percentage of the fund recovered. In short, the district court could and did exercise discretion to award a fee in this "common fund" litigation in a manner fully compatible with "equity and

justice." *See Trustees v. Greenough,* 105 U.S. 527, 536, 26 L.Ed. 1157 (1882); *see also Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980).

The Supreme Court has twice cautioned that a "request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart,* 103 S.Ct. at 1941; *Blum v. Stenson,* 104 S.Ct. at 1550 n. 19; *see National Association of Concerned Veterans v. Secretary of Defense,* 675 F.2d at 1324; *Copeland v. Marshall,* 641 F.2d at 896. In this area, as in others, the conduct and attitudes of official actors may be contagious. That conduct will not be "worthy of our great government," *Brandt v. Hickel,* 427 F.2d 53, 57 (9th Cir.1970), if it is obdurate or intransigent. Nonnegotiable postures on fee awards may waste resources for all concerned.[7] We repeat, and underscore the special importance of government attention to, the Supreme Court's call for "conscientious effort" to resolve differences over fee awards reasonably, responsibly, and without precipitating another federal case. *See Blum v. Stenson,* 104 S.Ct. at 1550 n. 19.

For the reasons stated, the judgment of the district court is

*Affirmed.*

gals." Brief for Appellants at 21 n.14. Those rates, the government suggested, "are very high." *Id. But cf. Blum v. Stenson,* —— U.S. ——, 104 S.Ct. 1541, 1544 & n.4, 79 L.Ed.2d 891 (1984) (district court award, affirmed on appeal to Second Circuit, approved fees for legal aid lawyers with 1½ years' experience in practice, at rates varying from $95 to $105 per hour).

**7.** Government counsel confirmed at oral argument that it is the policy of the United States Attorney in this District to settle fee applications without a contest in court only when counsel accept rates not in excess of $75 per hour for

partners and $60 per hour for associates. In view of that firm policy, adhered to despite precedents approving rates considerably in excess of the $75 and $60 figures, *see, e.g., Jordan v. United States Dep't of Justice,* 691 F.2d 514, 521 (D.C.Cir.1982) ($125 per hour for lead counsel "[n]either outrageous [n]or unprecedented"); *Environmental Defense Fund, Inc. v. EPA,* 672 F.2d 42, 61 (D.C.Cir.1982) ($110 for lead counsel), Puerto Rico's counsel suggested that presentation of their agreed-upon hourly rates or other market rate documentation would not have avoided "a second major litigation." *See* Brief for Appellee at 29.