No. 59,527

CLARENCE GIGOT, *et al., Plaintiffs/Appellees*, v. CITIES SERVICE OIL COMPANY, *et al., Defendants/Appellees*, and AMOCO PRODUCTION COMPANY, *Appellant.*

(737 P.2d 18)

Opinion filed May 1, 1987.

*Richard C. Hite*, of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, argued the cause, and *Steven D. Gough*, of the same firm, and *Charles T. Krol*, regional counsel, and *Mary S. Haskins*, of Amoco Production Company, of Denver, Colorado, were with him on the brief for appellant.

*Gerald Sawatzky*, of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause, and *Robert C. Foulston* and *Jim H. Goering*, of the same firm, and *Jerome E. Jones, Richard Jones*, and *Robert J. O'Connor*, of Hershberger, Patterson, Jones & Roth, of Wichita, and *Glenn D. Young, Jr.*, of Gott, Young & Bogle, P.A., of Wichita, were with him on the brief for defendants/appellees.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This is a class action suit brought to recover the reasonable value of helium extracted from natural gas. The case was settled and Amoco Production Company (defendant/cross-claimant) appeals from the district court's award of attorney fees.

In May 1971, plaintiff landowners brought this suit in Finney County District Court to recover the reasonable value of helium contained in helium-bearing natural gas extracted from their land. Plaintiffs owned land in or near Finney County from which natural gas was severed under oil and gas leases held by defendant lessee-producers. The producers originally named in the suit were: Amoco Production Company, represented by Gott, Young & Bogle; Champlin Petroleum Company, represented by Adams, Jones, Robinson and Malone until September 1974, and by Gott, Young & Bogle after that date; Skelly Oil Company (which became Getty Oil Company as the result of a merger and later became Texaco Producing, Inc.) represented by Foulston, Siefkin, Powers & Eberhardt (Foulston); Mobil Oil Corporation, Continental Oil Company, Northern Pump Company, D.R. Lauck Oil Company, Kansas Natural Gas, Inc., and Petroleum, Inc., represented by Hershberger, Patterson, Jones and Roth (Hershberger). Unnamed members of the class were 186 producers who delivered gas into the system serving the Sunflower plant near Scott City, Kansas. The Foulston firm was considered lead counsel in the case with Hershberger and Gott, Young & Bogle acting as co-lead counsel.

Plaintiffs also named as defendants pipeline companies which had constructed the Sunflower plant for the purpose of extracting helium from natural gas for sale to the private market. The Sunflower plant began extracting helium from natural gas in September 1968. These companies which extracted and then sold the helium are referred to as the "helex companies" or "helex group."

The lessee-producers cross-claimed against the helex compa-

nies for the reasonable value of the helium extracted. KN Energy, Inc., (K-N) cross-claimed against the lessee-producers, alleging that they had warranted title to all gas purchased by K-N and had agreed to indemnify and hold K-N harmless from all claims relating to the gas.

Shortly after this case was filed, it was removed to federal court. There were long periods of relative inactivity during the thirteen years the case was pending in federal court. The parties were working on and awaiting developments in other related helium cases.

The parties attempted to negotiate a settlement in the summer of 1984, but negotiations proved fruitless. On September 4, 1984, approximately one week before trial was to begin, the case was remanded to state district court because the federal court lacked subject matter jurisdiction. The parties had completely prepared the case for trial prior to remand.

Following remand, the parties continued preparation for trial, briefed issues, and held a pretrial conference. The district court certified the plaintiff landowners and defendant lessee-producers as classes pursuant to K.S.A. 60-223(b)(1). The lessee-producer/cross-claimants and cross-defendants were certified as a K.S.A. 60-223(b)(3) class. The parties again began settlement negotiations which culminated in a settlement agreement on September 11, 1985.

The settlement required K-N and Cities Service Cryogenics, Inc., (Cities Service) to pay the landowner and lessee-producer classes for helium produced and sold at the plant from 1968 through December 31, 1984, at the rate of $3.25 per thousand cubic feet (mcf). From January 1, 1985, until deposit of funds as required in the agreement, Cities Service and K-N were required to pay 19.45% of the amount received for helium sales. Interest was to be calculated at 6% per annum until July 1, 1980, and at 10% per annum until deposit of the funds with the clerk. The payments were to be allocated on the basis of one-eighth to the landowners and seven-eighths to the lessee-producers, or the royalty fraction specified in each lease if different from one-eighth. Based on testimony estimating helium production, the court found that Cities Service and K-N should deposit an initial settlement fund of $8,000,363.93. This amount reflected $75,000

advanced to the Foulston firm for expenses incurred for expert consultants and for an allocation study. The fund was to be invested in treasury bills until final distribution, which was scheduled for October 15, 1986.

The parties also entered into an agreement covering future helium sales in which Cities Service and K-N agreed to pay 19.45% of gross proceeds from the sale of helium. Cities Service and K-N were able to obtain the signatures of 176 of K-N's 186 natural gas suppliers. The 176 suppliers who consented to the agreement represent approximately 99% of the helium supplied to the plant. The district court found both agreements to be fair and reasonable to all parties.

The court appointed Jim Goering of the Foulston firm as special master to send notice to all class members, review filings, compile a listing of persons entitled to receive payment, aid in allocating and distributing the settlement fund, and aid the court in resolving controversies which might arise.

The settlement ordered payment from the settlement fund of the litigation expenses and attorney fees of the landowner and lessee-producer classes. The amounts were to be determined by the district court.

The district court ordered that notice of the settlement agreement be sent to each member of the lessee-producer class. The notice reported the terms of the settlement and required counsel for the lessee-producer class to file and serve on all named members of the lessee-producer class copies of their verified applications for attorney fees and expenses. Any class members objecting were required to file a pleading on or before February 11, 1986. The district court also ordered publication of the notice.

In their fee applications, class counsel requested that the fund reimburse all lessee-producer litigation expenses and attorney fees advancements, with interest. Counsel also requested 20% of the fund balance as attorney fees. The three firms agreed that of the 20%, 60% (equivalent to 12% of the common fund) should be awarded to the Foulston firm; 26.5% (or 5.3% of the fund) should go to the Hershberger firm; and 13.5% (or 2.7% of the fund) should go to Gott, Young & Bogle. (These are the figures agreed to at the attorney fees hearing, not the amounts requested in the applications.)

On February 11, 1986, Amoco filed a notice of objection to the requested attorney fees and a motion for an evidentiary hearing on the matter. Amoco's objection was based on the following contentions: 1) Gott, Young & Bogle should not be permitted to recover from Amoco's portion of the common fund recovery because Amoco had paid them pursuant to their longstanding fee arrangement; 2) the attorney fees awarded Foulston and Hershberger should not be assessed against Amoco's share of the recovery because Amoco's interests were represented by its own counsel; 3) clients who had paid attorney fees to class counsel should be reimbursed from fees awarded to class counsel, not from the fund, to prevent class counsel from obtaining a double recovery of attorney fees; and 4) the hourly rates sought by class counsel were excessive.

At the March 11 and 12, 1986, hearing to determine attorney fees, Amoco presented testimony from a certified public accountant with the firm of Grant Thornton (formerly Fox and Company) regarding the class counsel fee applications. Ladd Petroleum Corporation, an unnamed member of the lessee-producer class, also questioned whether the requested attorney fees were reasonable.

The district court correctly noted that it must determine reasonable attorney fees in accordance with *Shutts v. Phillips Petroleum Co.*, 235 Kan. 195, 679 P.2d 1159 (1984), *aff'd in part, rev'd in part* 472 U.S. 797, 86 L. Ed. 2d 628, 105 S. Ct. 2965 (1985). All attorney fees and expenses advanced by lessee-producers, together with interest, were ordered reimbursed from the fund. Class counsel were awarded 18% of the common fund as attorney fees to be distributed as agreed by counsel. The court adopted appellee's (Foulston firm's) proposed findings of fact and conclusions of law on the attorney fees issue as authority for its decision. The court found that there was no just reason for delay and expressly directed the entry of judgment. K.S.A. 1986 Supp. 60-254(b).

Amoco timely appeals the attorney fees award.

Appellee lessee-producers (hereafter appellees) first contend Amoco does not have standing to bring this appeal. Appellees claim that Amoco will have to pay more in attorney fees and

expenses under the result urged by Amoco on appeal than it would have to pay under the district court's ruling and therefore Amoco lacks standing to bring this appeal.

General rules regarding standing on appeal were stated in *Blank v. Chawla*, 234 Kan. 975, 978, 678 P.2d 162 (1984):

"Ordinarily a party cannot appeal from a judgment unless it has a particular interest therein and is aggrieved or prejudiced thereby. Ordinarily its interest must be immediate and pecuniary. *McLeod v. Palmer*, 96 Kan. 159, 150 Pac. 535 (1915). Appeals are not for the purpose of settling abstract questions, however interesting or important to the public generally, but only to correct errors injuriously affecting the appellant. *Anderson v. Carder*, 159 Kan. 1, 4, 150 P.2d 754 (1944)."

In *Carter v. State Department of Social Welfare*, 189 Kan. 688, 689, 370 P.2d 1019 (1962), the court noted that modification of a journal entry would have benefited the appellant "and a party has no right to complain on appeal of an order in his favor."

The record before this court does not support the appellees' claim of lack of standing. Under Amoco's theory, it would be reimbursed $18,219.00 for litigation expenses and interest previously advanced. This is the amount appellees contended Amoco should be reimbursed in their suggested findings of fact and conclusions of law. Amoco will be reimbursed its portion of the common fund allocated to attorney fees, or $9,685.29. (This amount was obtained by determining what percentage of the common fund Amoco will recover. The total common fund, $8,000,363.93, was divided by Amoco's highest estimate of its share, $250,000.00. Amoco's share is 3.12% of the common fund. The total amount to be reimbursed parties from the fund for attorney fees, $310,426.12, was multiplied by 3.12%.) Amoco must also pay its share of the $156,277.47 allocation, settlement, and publication costs, or $4,875.86 ($156,277.47 x 3.12%). These figures are summarized as follows:

Amoco is reimbursed: $18,219.00 litigation expenses & interest paid to date of settlement

$ 9,685.29 share of fund allocated for attorney fees (3.12% of $310,426.12)

$27,904.29

Amoco pays: $37,448.95 fees already paid

    4,875.86  share of settlement & publi-
cation costs (3.12% of
$156,227.47)

 16,446.62  amount previously paid to
litigation fund

$58,771.43

The net effect would be that Amoco pays $30,867.14 in attorney fees, costs, and expenses ($58,771.43 minus $27,904.29).

Under the district court's order, Amoco will be reimbursed $66,500.43 from the common fund. Amoco will then pay its share (3.12%) of the total amount paid from the fund for reimbursed attorney fees and allocation, settlement, and publication costs ($310,426.12 + $156,277.47 $466,703.59), or $14,561.15 ($466,703.59 × 3.12%). Amoco will also pay 18% of its $250,000 recovery for attorney fees, or $45,000. These figures are summarized as follows:

Amoco is reimbursed: $37,448.95  fee paid to GY&B

 16,446.62  amount previously paid to
litigation fund

 12,604.86  interest

$66,500.43

Amoco pays:          $14,561.15  share of costs

 45,000.00  share of attorney fees
(18% of $250,000.00)

 37,448.95  fee already paid to GY&B

 16,446.62  litigation costs paid

$113,456.72

The net effect would be that Amoco pays $46,956.29 in attorney fees, costs, and expenses. Amoco would pay $16,089.15 more in attorney fees and costs under the court's order than under its theory. Obviously, Amoco has a sufficient interest in the district court's judgment as to attorney fees and is injured, aggrieved, and prejudiced thereby.

Appellees' argument is without merit and we find that Amoco has standing to bring this appeal.

We now turn to the merits of this appeal. Amoco first contends that Gott, Young & Bogle was collaterally estopped from claiming a portion of the common fund as attorney fees.

Amoco contends that its fee arrangement with Gott, Young & Bogle was determined in a previous action and that Gott, Young & Bogle was collaterally estopped from raising the issue in the present case. Amoco bases its contention on the court's findings in *National Helium Corporation v. Panhandle Eastern Pipe Line Company* (No. KC 1980 [D. Kan. May 15, 1985]). In *Panhandle*, the court found that Gott, Young & Bogle was employed in the helium litigation by Amoco pursuant to Amoco's employment policy for outside counsel and that Amoco had paid the firm for legal services rendered throughout the litigation. The court found that this precluded reimbursement to Amoco of payments made to Gott, Young & Bogle as costs of the settlement proceeding. Amoco raised this issue at the hearing to determine attorney fees.

In *Kearney v. Kansas Public Service Co.*, 233 Kan. 492, 508, 665 P.2d 757 (1983) (quoting *Williams v. Evans*, 220 Kan. 394, Syl. ¶ 2, 552 P.2d 876 [1976]), the court stated the elements of collateral estoppel:

" 'The doctrine of collateral estoppel may be invoked as a bar to litigating an issue when the following is shown: (1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue, based upon ultimate facts as disclosed by the pleadings and judgment; (2) the parties are the same or in privity; and (3) the issue was actually determined and was necessary to support the judgment.' "

Amoco, without further discussion, states that "[t]he record conclusively demonstrates that all of these elements have been satisfied" and that the district court erred in failing to apply the doctrine of collateral estoppel. Contrary to Amoco's assertion, however, the elements necessary to establish collateral estoppel are not present. The attorney fees issue was not "necessary to support the judgment" in the underlying action. Courts have recognized that an award of attorney fees, although appealable, is separable from and collateral to the rights asserted in the underlying action. *In re Derickson*, 640 F.2d 946, 948 (9th Cir. 1981). See also *Sprague v. Ticonic Bank*, 307 U.S. 161, 170, 83 L. Ed. 1184, 59 S. Ct. 777 (1939) (petition for reimbursement of attorney fees is an independent proceeding supplemental to the original proceeding); *Trustees v. Greenough*, 105 U.S. 527, 531,

26 L. Ed. 1157 (1881) (counsel fees incidental and collateral to main cause).

Also missing is the element of mutuality of parties. "[A]n attorney is not a party to a suit for which he is retained [citation omitted], and a contingent fee does not give an attorney such an interest in the litigation so as to make him a party [citation omitted]." *Giles v. Russell*, 222 Kan. 629, 634, 567 P.2d 845 (1977).

Gott, Young & Bogle was not collaterally estopped from claiming attorney fees from the common fund.

Amoco next contends that Gott, Young & Bogle is not entitled to recover attorney fees from Amoco's portion of the common fund. Amoco argues that, because it employed Gott, Young & Bogle pursuant to its "Guidelines Governing Retention of and Relationship with Outside Counsel," the law firm is bound by that agreement. The guidelines state, in part:

"We expect to be billed strictly on the basis of lawyer and paralegal time involved, plus reasonable other expenses, predominately of an out-of-pocket nature. . . .

"Needless to say, we do not pay a bonus or other supplement based on results obtained."

The district court did not determine whether Gott, Young & Bogle was employed pursuant to the guidelines. The district court ruled: "I conclude that in establishing reasonable fees, the Court must determine, on the basis of the entire class, appropriate and reasonable fees to be allowed, without regard to a single named party's agreement or lack of agreement with counsel."

There is authority for the district court's conclusion. In *Dunn v. H.K. Porter Co., Inc.*, 602 F.2d 1105, 1110 (3d Cir. 1979), the court stated:

" 'Where the only basis for a fee award is noncontractual, the court's authority to determine the amount of the award to the class attorney is clear. Even where there is a fee contract, courts have the general power to override it, and set the amount of the fee.' *Developments in the Law—Class Actions*, 89 Harv. L. Rev. 1318, 1607 (1976). *See also* Manual for Complex Litigation § 1.47(b)(2) (1977, West Pub. Co.)"

However, there is no reason to reach this issue. Under the district court's decision, Amoco is to be reimbursed all of the fees

it advanced Gott, Young & Bogle from the fund. Gott, Young & Bogle received an amount determined to be reasonable by the district court. Amoco therefore is no longer paying the fee to Gott, Young & Bogle; instead all members of the class, including Amoco, share in paying the fee. Amoco does not pay Gott, Young & Bogle twice but pays only its proportional share of the litigation fees and expenses. The district court was correct in finding that Gott, Young & Bogle is entitled to recover attorney fees from Amoco's portion of the common fund; however, Gott, Young & Bogle should not be allowed to recover twice for services rendered in this case at the expense of all class members, including Amoco. This inequitable result can be avoided simply by reducing both the attorney fee award and Gott, Young & Bogle's 13.5% share of the attorney fee award by $37,448.95, which is the amount Amoco paid Gott, Young & Bogle for attorney fees.

Amoco next contends the district court erred in awarding attorney fees to Foulston, Siefkin, Powers & Eberhardt and Hershberger, Patterson, Jones & Roth from Amoco's share of the fund.

Amoco argues that, since it was adequately represented throughout the litigation by Gott, Young & Bogle, the Foulston and Hershberger firms should not be awarded attorney fees from its portion of the common fund.

In *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980), the court recognized the right of a lawyer who recovers a common fund to recover a reasonable fee from the fund as a whole:

"Since the decisions in *Trustees v. Greenough*, 105 U.S. 527 (1882), and *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1885), this Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole. See *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); *Sprague v Ticonic National Bank*, 307 U.S. 161 (1939); cf. *Hall v. Cole*, 412 U.S. 1, (1973). The common-fund doctrine reflects the traditional practice in courts of equity, *Trustees v. Greenough, supra*, at 532-537, and it stands as a well-recognized exception to the general principle that requires every litigant to bear his own attorney's fees, *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S., at 257-258. The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense. See, *e.g.*, *Mills v. Electric Auto-Lite Co.*, 396 U.S., at 392. Jurisdiction over the fund

involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit. See *id.*, at 394."

Although it is clear that class counsel are entitled to a reasonable fee from the common fund recovered as a result of their efforts, difficulties arise when members of the class are represented by their own attorneys. One approach taken is that the class attorney "may receive fees from that share of the fund attributable to class members other than his or her own private clients, whether or not those other class members are themselves represented by counsel." *In re Agent Orange Product Liability Litigation*, 611 F. Supp. 1296, 1317 (E.D.N.Y. 1985). However, in *Agent Orange*, the court noted that this raises issues as to whether class counsel's private clients can be charged with a pro rata share of the total fee award to all attorneys and whether those class members have a right to contribution from the rest of the class toward payment of their own attorney fees.

In *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 770 (9th Cir. 1977), the court stated that "as a general rule, if the third parties [beneficiaries of the fund] hire their own attorneys and appear in the litigation, the original claimant cannot shift to them his attorney's fees." However, the *Hughes* court noted an exception to this rule where the contributions of lead counsel and other attorneys are unequal. The purpose of the exception is to avoid unjust enrichment, or "coattailing." 557 F.2d at 772.

The district court's decision in this case eliminated both of those problems. By ordering that all attorney fees already paid by the parties be reimbursed from the fund, all fees are shared equally by all members of the class whether they were represented by individual counsel or represented only by class counsel. The attorneys themselves were in a unique position to assess each firm's contribution to the total recovery effort. This solution is not a workable one where the attorneys are unable to reach an agreement as to each attorney's proportional contribution toward attaining the common fund. However, under the unique facts of this case, the trial court did not abuse its discretion. *Shutts v. Phillips Petroleum Co.*, 235 Kan. at 224.

Amoco's final contention is that the district court did not apply the correct standard in awarding attorney fees.

The trial court recognized that reasonable attorney fees must be determined in accordance with guidelines stated in *Shutts v. Phillips Petroleum Co.*, 235 Kan. at 223-24:

"The amount of attorney fees awarded should be within the sound discretion of the trial court based upon guidelines established by this court. In 3B Moore's Federal Practice ¶ 23.91, the following criteria are suggested to be considered by the trial court in determining the size of attorney fees to be awarded in a class action:

" '(1) the number of hours spent on the case by the various attorneys and the manner in which they were spent;

" '(2) the reasonable hourly rate for each attorney;

" '(3) the contingent nature of success;

" '(4) the extent, if any, to which the quality of an attorney's work mandates increasing or decreasing [the] amount to which the court has found the attorney reasonably entitled.'

"Citing *Lindy Bros. Bldrs., Inc. of Phila. v. American R. & S. San. Corp.*, 487 F.2d 161, 166-69 (3d Cir. 1973). [Appeal after remand 540 F.2d 102 (3d Cir. 1976).] This list of considerations is not exclusive, however. Other considerations include the amount involved, as it determines the risk of the client and the commensurate responsibility of the attorney, and the result of the case, because that determines the real benefit to the client. Of major importance is the consideration of the benefit the lawsuit has produced. 7A Wright & Miller, Federal Practice and Procedure: Civil § 1803, p. 289-90; *Oppenlander v. Standard Oil Company (Indiana)*, 64 F.R.D. 597 (D. Colo. 1974). In *State of Illinois v. Harper & Row Publishers, Inc.*, 55 F.R.D. 221, 224 (N.D. Ill. 1972), the court recognized some attempt must be made by courts to suit the award of fees to the performance of the individual counsel in light of the time spent reaching a settlement, to prevent attorneys from taking advantage of class actions to merely obtain lucrative fees. See also 7A Wright & Miller, Federal Practice and Procedure: Civil § 1803, p. 292.

"Even where there has been no objection to the amount of attorney fees requested, it is the responsibility of the court to determine the award to assure that the amount awarded is reasonable. The trial court must hold an evidentiary hearing so that it has before it sufficient information to make a fair and adequate fee award. 3B Moore's Federal Practice ¶ 23.91, p. 23-568. Many recent cases have required attorneys to produce detailed time records indicating the time expended by each lawyer and the nature of work done by each to allow the court to determine, among other things, the necessity for and quality of the work done. See, *e.g.*, *In Re Equity Funding Corp. of America Securities*, 438 F. Supp. 1303 (C.D. Cal. 1977); *Green v. Wolf Corporation*, 69 F.R.D. 568 (S.D.N.Y. 1976). This, however, is only to be used as a starting point to determine the appropriate fee. 7A Wright & Miller, Federal Practice and Procedure: Civil § 1803, p. 267-69 (1983 Supp.). Wright and Miller suggest, in addition, that the court should consider the contingent nature of succeeding in the action, which would be awarded in addition to the allowance for the quality of counsel's work. The

reasons for the contingency award are (1) the plaintiffs' lawyer will not receive any compensation until the lawsuit is concluded and then only if he has been successful in securing a judgment for his clients, (2) unless both of these conditions are met the attorney will receive nothing for his efforts and will not be reimbursed for his expenses, and (3) lawyers who actively litigate class action cases largely depend on court-awarded fees for their economic survival. 7A Wright & Miller, Federal Practice and Procedure: Civil § 1803, pp. 274-75 (1983 Supp.)."

Both Amoco and appellees agree that *Shutts* controls, but each cites numerous authorities supporting their own interpretation and application of the *Shutts* guidelines. The differing approaches taken by courts in awarding fees was noted in *Brewer v. Southern Union Co.*, 607 F. Supp. 1511 (D. Colo. 1984). The *Brewer* court noted four methods for calculating attorney fees:

"In the past, some courts utilized a percentage of the total recovery as the best measure of a fair and reasonable fee. Under this approach the court would award attorney's fees based solely on the size of the fund and without an analysis of the means used to arrive at the appropriate percentage. This procedure has been heavily criticized, and no recent cases have utilized it. *See,* e.g., *West v. Capitol Federal Savings & Loan Assoc.*, 558 F.2d 977, 981 (10th Cir. 1977); *Black Gold, Ltd. v. Rockwool Industries, Inc.*, 529 F. Supp. 272, 274 (D. Colo. 1981), rev'd on other grounds, 732 F.2d 779 (10th Cir. 1984) [*cert. denied* 469 U.S. 854 (1984)]; *Knutson v. Daily Review, Inc.*, 479 F. Supp. 1263, 1268 (N.D. Cal. 1979).

"A second approach has been to weigh and evaluate a number of factors in determining a fair and reasonable fee award. Among the criteria to be considered are the number of hours reasonably expended on the case and the reasonable hourly rate charged by the attorneys. Under this method, however, these two factors carry no more significance than several others that may be considered depending on the facts and circumstances unique to the case. This approach is perhaps best exemplified by such cases as *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974) and *In Re King Resources Co. Securities Litigation*, 420 F. Supp. 610 (D. Colo. 1976). Indeed, prior to the decision in *Ramos v. Lamm*, 713 F.2d 546 (10th Cir. 1983), the Tenth Circuit Court of Appeals had expressly approved of the approach discussed in *Johnson v. Georgia Highway Express. See, Battle v. Anderson*, 614 F.2d 251 (10th Cir. 1980); *Francia v. White*, 594 F.2d 778 (10th Cir. 1979).

"A third method for calculating a reasonable fee award is the so-called 'lodestar' analysis first discussed in *Lindy Brothers Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973) (*"Lindy I"*) and *Lindy Brothers Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3d Cir. 1976) (*"Lindy II"*) (Appeal after Remand). This method has been gaining increasing popularity in recent years. As described in *Lindy I* and *Lindy II* this method starts with a determination of the number of hours reasonably expended on the case as well as

a reasonable hourly rate associated with the hours spent. The two multiplied together establish the 'lodestar'. Thereafter, under the most restricted approach, the lodestar may be modified up or down to reflect (1) the contingent nature of success in the action and (2) the quality of the work performed.

"A variation of the lodestar approach has been the subject of judicial and scholarly comment. This fourth method of calculating attorney's fees is really nothing more than a combination of the second and third methods outlined above. The lodestar calculation is used as a starting point, but with subsequent modification to reflect other subjective factors." *Brewer v. Southern Union Co.,* 607 F. Supp. at 1519-20.

Historically, in class action cases, courts have distinguished between common fund cases and statutory fee cases in determining attorney fees. In each case, the plaintiff must prevail before an attorney fee is awarded, the difference being that, in a common fund case, the attorney fee is paid from the recovery (common fund), while in a statutory fee case, the attorney fee is paid by the defendant, and is awarded regardless of whether the recovery is monetary or nonmonetary. The difference is important because, in the former, unless there is a common fund, *i.e.,* a monetary recovery, attorney fees cannot be awarded. It follows that in common fund cases, the amount of recovery acts as a ceiling on the amount of the attorney fees that can be awarded. The amount of recovery is more important in determining a reasonable attorney fee in common fund cases than in statutory fee cases.

The U.S. Supreme Court recognized this distinction in *Blum v. Stenson,* 465 U.S. 886, 900 n.16, 79 L. Ed. 2d 891, 104 S. Ct. 1541 (1984). At issue in *Blum* was an award of reasonable attorney fees under the Civil Rights Attorney's Fees Awards Act of 1976 (42 U.S.C. § 1988 [Supp. V 1976]). The *Blum* court quoted from *Hensley v. Eckerhart,* 461 U.S. 424, 435, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983):

" 'Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Blum v. Stenson,* 465 U.S. at 901.

In a footnote, the *Blum* court noted:

"Nor do we believe that the *number* of persons benefited is a consideration of significance in calculating fees under § 1988. *Unlike the calculation of attorney's fees under the 'common fund doctrine,' where a reasonable fee is based on*

*a percentage of the fund bestowed on the class, a reasonable fee under § 1988 reflects the amount of attorney time reasonably expended on the litigation.* Presumably, counsel will spend as much time and will be as diligent in litigating a case that benefits a small class of people, or, indeed, in protecting the civil rights of a single individual." (Emphasis added.) 465 U.S. at 900 n.16.

In 3 Newberg on Class Actions § 14.03 (2d ed. 1985), the author made the following interpretation of the *Blum* footnote:

"In contrast to a statutory fee determination, payable by the defendant depending on the extent of success achieved, a common fund is itself the measure of success. While the common fund recovered may be more or less than demanded or expected, the common fund represents the benchmark from which a reasonable fee will be awarded. Accordingly, in *Blum v Stenson,* another recent statutory fee case, the Supreme Court recognized this major distinction governing the determination of fee awards under a statute in contrast to the common fund doctrines. . . .

"Thus, a reasonable fee will be largely based on a fair percentage of the common fund."

In *Com. of Puerto Rico v. Heckler,* 745 F.2d 709 (D.C. Cir. 1984), the court approved an attorney fee award based on a fee request which documented time spent on the case but did not specify an hourly rate. The *Heckler* court stated that, although the normal starting point in calculating fees is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate, "[o]ther indicia of overall reasonableness control, however, 'under the "common fund doctrine," where a reasonable fee is based on a percentage of the fund bestowed on the class.' *Blum v. Stenson,* 465 U.S. 886, 104 S. Ct. 1541, 1550 n.16, 79 L. Ed. 2d 891 (1984); [citations omitted.]" 745 F.2d at 714.

Another interpretation of the *Blum* footnote is found in *In re Warner Communications Securities Litigation,* 618 F. Supp. 735 (S.D.N.Y. 1985), a class action securities fraud/insider trading suit. The *Warner* court first applied the lodestar method and then considered modifying factors. Citing the *Blum* footnote, the *Warner* court noted, "The Supreme Court has recently stated that the fee request must be looked at in terms of the percentage it represents of the total recovery." 618 F. Supp. at 749.

The *Warner* approach appears to be a well-reasoned interpretation of the *Blum* footnote. Rather than abandoning the traditional lodestar approach, the *Warner* approach provides an additional check on the amount of attorney fees awarded by

applying the lodestar approach and then determining whether the award represents a reasonable percentage of the common fund recovered. It should be noted both *Blum* and *Warner* are statutory fee cases.

In the present case, the district court did not perform a formal lodestar analysis and noted the difficulty in so doing because comprehensive time records were not kept by counsel. Although the lodestar factors, time and hourly rates, are two of the factors we require the district court to consider in arriving at a reasonable attorney fee award, our decision in *Shutts* does not preclude the method adopted by the *Warner* court nor the method employed by the district court in the present case. The district court considered the *Shutts* factors, including time and hourly rates. The journal entry states:

"In deciding a fair, reasonable and adequate award of attorneys' fees to counsel for Landowner-Lessors' and to counsel for Lessee-Producers', the Court has considered factors set forth in *Shutts v. Phillips Petroleum Company*, 235 Kan. 195: the time and labor required; the novelty and difficulty of the questions and issues involved; the skill required to perform the legal services properly; preclusion of other employment; customary fees and awards in similar cases; the contingent nature of the fee; the amount involved and the results obtained, including the benefit to the class members which has been achieved by the efforts of class counsel in this novel and complex litigation; the experience, reputation, and ability of counsel; and the nature of the representation with the client."

The district court also found that the lodestar analysis, if applied, would support the attorney fee awarded by the court. The district court awarded an attorney fee equal to 18% of the common fund, which, after considering the factors required by *Shutts*, it found to be reasonable. The fact that the district court expressed the attorney fees awarded as a percentage of the common fund is not per se an abuse of discretion, absent a showing that *Shutts* factors were not considered by the court.

In *Warner*, the U.S. District Court noted that courts have traditionally "awarded fees in the 20% - 50% range in class actions." 618 F. Supp. at 794. In Newberg, Attorney Fee Awards § 2.08 (1986), the author states:

"No general rule can be articulated on what is a reasonable percentage of a common fund. Usually 50 per cent of the fund is the upper limit on a reasonable fee award from a common fund, in order to assure that fees do not consume a

disproportionate part of the recovery obtained for the class, though somewhat larger percentages are not unprecedented. In the normal range of common fund recoveries, common fee awards fall in the 20 to 30 per cent range.

"The median of this usual range is 25 per cent. As an alternative to an initial focus on the recognized percentage range of common fund fee awards for cases that do not present extraordinary circumstances, this median 25 per cent figure can be considered by courts in their discretion as a reasonable and convenient starting point (norm) for common fund fee awards from which deviations should be made as the court considers various relevant fee determination factors."

The better policy would be for the trial court to perform a lodestar analysis in order that the fee award would bear some relationship to the time expended by the attorneys. The trial court would then have the discretion to modify the lodestar amount based on the other *Shutts* factors. To then view the fee award as a percentage of the common fund is an additional check in determining if it is reasonable. Although in the present case the district court basically reversed that process, it did consider the factors as required by *Shutts* in determining the amount to be awarded as attorney fees.

We find, therefore, that the guidelines as established by *Shutts* were followed and there was no abuse of discretion by the district court. The judgment of the district court is modified by reducing both the attorney fee award and Gott, Young & Bogle's share of that award by $37,448.95. In all other respects, the judgment is affirmed.