(264 P.3d 500)
No. 104,748

FREEBIRD, INC., ON BEHALF OF ITSELF AND ALL OTHERS SIMILARLY SITUATED, *Appellees*, (CHESAPEAKE ENERGY CORPORATION), *Class Member/Appellant*, v. CIMAREX ENERGY CO. (and Its Predecessors, Successors, and Affiliates), *Appellees*.

632

Opinion filed October 7, 2011.

*Robert W. Coykendall*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, for class member/appellant Chesapeake Energy Corporation.

*Rex A. Sharp* and *Barbara C. Frankland*, of Gunderson, Sharp & Walke L.L.P., of Prairie Village, for appellees Freebird, Inc., *et al.*

Before BUSER, P.J., ARNOLD-BURGER, J., and BUKATY, S.J.

ARNOLD-BURGER, J.: This was a class action lawsuit brought by Freebird, Inc. (Freebird) against Cimarex Energy Co. (Cimarex) for the underpayment of gas royalties. Cimarex and Freebird were able to reach a settlement agreement for $3.45 million. Chesapeake Energy Corporation (Chesapeake), an affected royalty owner and class action participant, appeals the district court's award of a one-third contingent fee to class counsel and a 1% incentive award to the class representative. Finding that the district court did not abuse its discretion in granting both awards, we affirm.

FACTUAL AND PROCEDURAL HISTORY

In 2008, Freebird filed a class action petition in which it alleged that Cimarex "failed to properly account to the royalty owners and pay royalty owners correctly by taking processing charges as deductions from natural gas, NGLs, or both."

The action was filed in Finney County, was removed to federal court, and then returned to state court. See *Freebird, Inc. v. Cimarex Energy Co.*, 599 F. Supp. 2d 1283 (D. Kan. 2008). After 15 months of discovery, Freebird and Cimarex began extensive mediation proceedings and filed numerous mediation memorandums, mediation statements, and responses to the mediation statements. Former federal District Judge Layn R. Phillips mediated a settlement.

Under the settlement agreement, Cimarex agreed to pay $3.45 million to a common fund for the class. Class counsel requested a one-third contingent fee and the class representative requested a 1% incentive award, each to be distributed from the fund prior to the distribution to the remaining class members.

Freebird requested preliminary approval of the settlement agreement, which the district court granted. A notice was sent to all class members of the proposed settlement.

Chesapeake filed an objection to the settlement agreement, requesting that a special master be appointed to review the request for attorney fees, litigation expenses, and the incentive award. Chesapeake was the only class member to object. Its recovery under the settlement was estimated to be about $500.

Freebird filed its motion and brief supporting approval of the settlement agreement. Attached to Freebird's motion were affidavits supporting the amount requested for attorney fees, litigation expenses, and the incentive award. A summary of attorney fees and expenses was also provided. In addition, Freebird filed a response to Chesapeake's objection, which addressed each of Chesapeake's concerns. Attached to Freebird's response was an affidavit submitted by its attorney fees expert, Lee Thompson, supporting the one-third contingent fee, the litigation expenses, and the incentive award.

On June 21, 2010, the district court held a settlement fairness hearing. At the hearing, Chesapeake did not object to the actual fairness or reasonableness of the settlement agreement. In addition, Chesapeake indicated that it did not object to the notice proceedings with regard to due process. However, it did object to the amount of attorney fees.

At the hearing, class counsel requested that the district court review in camera the contingent fee agreement between class counsel and Freebird, the itemization statement of the litigation expenses, and the detailed billing statement of attorney hours and fees. Chesapeake objected to the district court reviewing the documents in camera. The district court denied Chesapeake's objection and accepted and reviewed the documents in camera.

Furthermore, at the hearing, Chesapeake was afforded the opportunity to call the class representative or class counsel's expert on attorney fees and ask leading questions, which Chesapeake declined to do.

Subsequently, the district court filed detailed findings of fact and conclusions of law, first denying Chesapeake's objection, and then

certifying the class, approving the settlement agreement, the attorney fees, the litigation expenses, and the incentive award. Chesapeake appeals the award of attorney fees and the incentive award.

Additional facts will be set out as needed for this analysis.

## THE ATTORNEY FEE AWARD

Chesapeake objects to both the process used by the district court to determine the reasonableness of the attorney fees in this case and to the amount of the attorney fees awarded. We will first examine the process, which Chesapeake argues denied it a meaningful opportunity to challenge the attorney fee award.

Chesapeake argues that the district court's procedure at the fairness hearing did "not meet the very essence of fairness." We are referred to a definition of fairness as set out in *Wertz v. Southern Cloud Unified School District*, 218 Kan. 25, 32, 542 P.2d 339 (1975). Chesapeake is essentially arguing that it was denied procedural due process guaranteed by the Fourteenth Amendment to the United States Constitution because it was not allowed to view class counsel's detailed billing records.

"The basic elements of procedural due process are notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Alliance Mortgage Co. v. Pastine*, 281 Kan. 1266, 1275, 136 P.3d 457 (2006). The concept is flexible in that "not all situations calling for procedural safeguards call for the same kind of procedure." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). Although the essence of procedural due process is that the parties be given notice and an opportunity to be heard, it does not entitle the parties to dictate the manner in which they are to be heard. *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 325 (10th Cir. 1984). Whether due process was provided in specific circumstances raises issues of law, and appellate review is unlimited. *Alliance Mortgage*, 281 Kan. at 1272.

Our courts employ a multiple-step analysis in reviewing whether a civil litigant's procedural due process rights were violated. The first step requires the determination of whether a protected liberty or property interest is at stake. If so, the second step requires a determination of the nature and extent of the process due. *In re*

*J.D.C.*, 284 Kan. 155, 166, 159 P.3d 974 (2007). Our Supreme Court has recognized the need for procedural due process in gas royalty class action lawsuits and has found that it is provided when plaintiffs are given adequate notice and an opportunity to be heard. *Shutts, Executor v. Phillips Petroleum Co.*, 222 Kan. 527, 567 P.2d 1292 (1977), *cert. denied* 434 U.S. 1068 (1978) (*Shutts I*). We will next examine whether, under the totality of the circumstances, Chesapeake was afforded procedural due process in this case.

*The notice of the proposed settlement*

When the court is presented with a proposed settlement in a class action lawsuit, K.S.A. 60-223(e) requires that notice of the proposed settlement be given to all class members "in such manner as the court directs." The statute does not set forth any minimum requirements for the notice, and there are no Kansas cases that address the detail that must be contained in the notice. Federal Rule of Civil Procedure 23(e)(1) contains a similar provision: "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal."

The Tenth Circuit Court of Appeals addressed the meaning of the federal rule in *In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1111 (10th Cir. 2001), and held that the settlement notice must " ' "fairly apprise" the class members of the terms of the proposed settlement and of their options.' " More specifically, with regards to notice of attorney fees, at least one court has found that settlement notices must, at a minimum, contain the maximum amount of attorney fees sought by class counsel and specify the proposed method of calculating the award. *General Motors Corp. v. Bloyed*, 916 S.W.2d 949, 957 (Tex. 1996).

In this case the notice identified that the Common Fund Settlement Proceeds were $3,450,000 and that class counsel was to be awarded one third of the Common Fund Settlement Proceeds after deduction of fees and expenses.

Although Chesapeake did not object to the sufficiency of the notice, we review it to demonstrate what information Chesapeake had and what information was required with regards to attorney fees at the time it filed its objection. We find that in this case the

notice fairly apprised members of the class of the amount of attorney fees that would be requested and the method of calculation.

*An opportunity to be heard*

In order to prevent spurious objections to a class action settlement, most notices of proposed settlement also contain a mandatory procedure that objectors must follow. 4 Conte & Newberg, Newberg on Class Actions § 11:56, p. 181 (4th ed. 2002). In this case, objectors were required to provide a detailed statement of the specific legal and factual basis for each and every objection, including a list of legal authorities, witnesses, and exhibits. Granted, based upon the information in the notice alone, an objector may have insufficient information to determine independently whether the amount of the attorney fees to be awarded is appropriate. Moreover, because the time given to file objections in a class action is usually relatively short, often 30 days or less, the objector often has little time to fully develop the details of the challenge. Therefore, the objector may need to secure evidence through independent discovery and presentation of witnesses at the settlement hearing. See 4 Newberg on Class Actions § 11:57, pp. 183-84.

In this case, all notices were mailed and/or published on or about April 12, 2010, with objections due by June 1 and a fairness hearing set for June 21, giving an objector over 60 days to obtain the necessary information. The notice advised class members that it was only a summary of the litigation and settlement and they could obtain a copy of the settlement agreement upon request, as well as review the court file and pleadings at any time at the Finney County Courthouse.

Chesapeake filed its objection on June 1, 2010. The objection made no request for any discovery or for a copy of detailed billing records. It listed no exhibits or witnesses. It alleged that "[o]n their face, the proposed attorney's fees and class representative fees are excessive" and requested that a special master be appointed to "independently review class counsel's request for attorney fees and litigation expenses."

On June 17, 2010, Freebird filed its brief in support of settlement and attorney fees. It included 421 pages of supporting doc-

umentation and affidavits. It included a summary of attorney and paralegal time and gross expenses. In addition, Freebird filed a response to Chesapeake's objection along with 301 pages of supporting documentation. In its response, Freebird objected to producing any detailed time records, arguing that they were irrelevant because Kansas recognizes attorney fees based on a percentage of the common fund, not a lodestar methodology (in which hours are multiplied by hourly fees and then subjected to an overarching multiplier accounting for the complexity of the case and the risk involved to the attorney). Freebird argued that the summary numbers already provided were sufficient. Finally, Freebird objected to presentation of the detailed billing records in any manner other than the court's in camera inspection on the basis of attorney work product and attorney-client privilege. Class counsel was currently prosecuting another class action lawsuit against Chesapeake and believed the information to be "especially sensitive."

At the fairness hearing, the proponent of the settlement, in this case Freebird, must show that the proposed settlement is fair, reasonable, and adequate. This may be accomplished by witness testimony, experts, or affidavits. See Herr, Annotated Manual for Complex Litigation Fourth, § 21.634, p. 499 (2011). Even if there has been no objection to the amount of attorney fees requested, it is the responsibility of the court to determine the attorney fee award to assure the amount awarded is reasonable. *Shutts v. Phillips Petroleum Co.*, 235 Kan. 195, 223, 679 P.2d 1159 (1984) (*Shutts II*), *aff'd in part, rev'd in part, and remanded* 472 U.S. 797, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985).

The law favors settlement of disputes. *Bright v. LSI Corp.*, 254 Kan. 853, Syl., 869 Kan. 686 (1994). Therefore, "[o]nce the court has given preliminary approval, an agreement is presumptively reasonable, and an individual who objects has a heavy burden of demonstrating that the settlement is unreasonable." *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 138-39 (W.D. Ky. 1992). Objectors must raise cogent factual or legal objections. See *Malchman v. Davis*, 761 F.2d 893, 897-98 (2d Cir. 1985). Objectors are not entitled to stop the settlement in its tracks without demonstrating any factual basis for their objection. To allow such disruption to

the settlement on the basis of nothing more than unsupported suppositions would completely thwart the settlement process. *City of Detroit v. Grinnell Corporation*, 495 F.2d 448, 464 (2d Cir. 1974). See 4 Newberg on Class Actions § 11:58, p. 208; 7B Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1797.1, p. 113 (2005) (providing that in class action settlement disputes "[o]nly clearly presented objections . . . will be considered").

Chesapeake had ample time and opportunity to make a full evidentiary presentation in support of its objection, but it chose not to. It had an opportunity to review the documentation presented by class counsel. It had an opportunity to request additional discovery. It had an opportunity to submit any written materials supporting its allegation that the attorney fees were excessive "on their face." The district court allowed counsel for Chesapeake the opportunity to cross-examine the affiants, but counsel chose not to do so. Chesapeake brought nothing of factual substance to the court's attention except counsel's statements, referring to the attorney fee request, that "[o]n the face, it looks high to me, but maybe at the end of the day when we hear all the evidence, it's not." It did nothing to contravene the evidence presented. It did not request a continuance to obtain more information.

Chesapeake contends that in spite of its opportunity to present evidence, the process was tainted by its inability to view the detailed billing records submitted by class counsel at the fairness hearing. Without these records, it could not "cross-examine an affidavit." Class counsel's justification for its request that the evidence be reviewed solely in camera was a claim of attorney-client privilege or attorney work product.

The questions for this court to consider are whether the withholding of evidence was proper and, if it was not proper, did it deny Chesapeake procedural due process? Therefore, we will next examine the appropriateness of withholding the detailed billing records from Chesapeake.

A district court may conduct an in camera inspection of alleged confidential communications to determine whether the attorney-client privilege applies. See *Kerr v. United States District Court*, 426 U.S. 394, 404-06, 96 S. Ct. 2119, 48 L. Ed. 2d 725 (1976). In

this case, although the district court, after in camera review, did not expressly find the records were privileged, it did so by implication because it accepted them under seal and did not reveal their contents to Chesapeake. To determine whether such a finding was proper, we must determine whether the detailed attorney billing records are privileged under the attorney-client privilege statute, K.S.A. 60-426, or the attorney work-product doctrine, K.S.A. 60-226(b)(4), as argued by Freebird. When the underlying facts are undisputed, a ruling on the existence and effect of an attorney-client privilege is reviewable by an appellate court de novo. *State v. Jones*, 287 Kan. 547, 554, 198 P.3d 756 (2008).

Our Supreme Court has held that all narrative statements in attorney fee statements are not per se privileged. Parties claiming privilege are required to show its application to a particular narrative statement in the billing records. *Cypress Media, Inc. v. City of Overland Park*, 268 Kan. 407, 425, 997 P.2d 681 (2000). Likewise, the work-product doctrine contained at K.S.A. 60-226(b)(4) does not offer a per se exemption for attorney billing statements. See 268 Kan. at 427. Certainly, if the billing statement narrative reflected litigation strategy or specified the nature of the services provided, such as research to a particular area of law, it may be privileged. See *Hampton Police Ass'n v. Town of Hampton*, 20 A.3d 994, 1001-02 (N.H. 2011). However, having reviewed the billing records presented by Freebird, which are part of the record on appeal, we find that very few, if any, entries deal with litigation strategy or particular research. The vast majority simply document e-mails, telephone calls, or document preparation with no substantive detail. Therefore, because Freebird failed to establish the application of the privilege to the billing statement entries, as required by *Cypress Media*, the district court erred in finding that the statements were privileged and erred in failing to disclose the billing statements, upon request, to Chesapeake.

However, this error did not deprive Chesapeake of procedural due process given the totality of the circumstances. The district court was aware that Chesapeake thought the fees were too high. The district court itself is an expert in the area of attorney fees and can draw on and apply its own knowledge and expertise in deter-

mining their value. *Johnson v. Westhoff Sand Co.*, 281 Kan. 930, 940, 135 P.3d 1127 (2006). Although some courts have required the submission of detailed billing statements, our Supreme Court has held that this information is only a starting point and is not independently determinative of the appropriateness of the award. *Shutts II*, 235 Kan. at 223-24; see also *In re Prudential Ins. Co. America Sales Litigation*, 148 F.3d 283, 342 (3d Cir. 1998) (objectors not entitled to discovery of time records when court is using lodestar method only as a cross-check of the award generated by the percentage-of-recovery method). The district court reviewed the detailed billing statements along with all the other evidence submitted to determine if the fees were reasonable. In denying Chesapeake's objection, the district court outlined its reasons and noted that Chesapeake was the sole objector. It correctly noted that our Supreme Court has accepted the common-fund doctrine (percentage of recovery) as the basis for awarding attorney fees in class actions, regardless of the number of hours required to achieve the settlement fund. *Moore v. St. Paul Fire Mercury Ins. Co.*, 269 Kan. 272, 277, 3 P.3d 81 (2000). At the hearing, it noted that based on the lodestar method, the hours spent multiplied by the hourly rate would be approximately $460,000 and, even with a conservative risk multiplier, the result would be more than the one-third contingency requested.

Therefore, given that this was a common-fund doctrine case, the detailed billing statements were not critical to the analysis, and the failure to provide the information to Chesapeake did not deny it procedural due process. Moreover, as we will examine next, there was substantial additional evidence in the record to support the district court's award of attorney fees.

*The amount of the attorney fee award*

Chesapeake contends that the award of attorney fees was excessive.

An attorney who recovers a common fund in a class action suit has the right to recover a reasonable fee from the fund as a whole. *Gigot v. Cities Service Oil Co.*, 241 Kan. 304, 313, 737 P.2d 18 (1987). This court reviews a district court's award of attorney fees

in a common fund class action suit under an abuse of discretion standard. *Shutts II*, 235 Kan. at 224.

There are several factors to which the district court should look in order to determine the reasonableness of attorney fees in a class action suit involving a common fund. These factors include:

- the number of hours spent on the case by the attorney and how those hours were spent;
- the reasonable hourly rate for the attorney;
- the contingent nature of success;
- whether the attorney's quality of work should increase or decrease the amount that the attorney should be reasonably entitled to;
- the amount involved, which determines the client's risk and the attorney's responsibility;
- the result of the case, which determines the true benefit to the client; and
- the benefit that the lawsuit produced. *Shutts II*, 235 Kan. at 223-24.

In addition, when deciding the reasonableness of attorney fees, the eight factors set forth in Rule 1.5(a) (2010 Kan. Ct. R. Annot. 458) of the Kansas Rules of Professional Conduct (KRPC) should be considered. The district court itself is an expert in the area of attorney fees and can draw on and apply its own knowledge and expertise in determining their value. An appellate court is also an expert on the reasonableness of attorney fees. However, an appellate court does not substitute its judgment for that of the district court on the amount of the attorney fee award unless in the interest of justice the appellate court disagrees with the district court. *Johnson*, 281 Kan. at 940. An attorney fee award will not be set aside on appeal when supported by substantial competent evidence. [Citation omitted.]" *In re Marriage of Burton*, 29 Kan. App. 2d 449, 454, 28 P.3d 427, *rev. denied* 272 Kan. 1418 (2001).

In the present case, the district court determined that the factors set out in KRPC 1.5(a)(1), (3), (4), and (7) were the most applicable, and they will be examined in more detail below. Moreover,

the district court deemed KRPC 1.5(a)(2), (5), and (6) neutral for its consideration.

The district court first looked to the benefit the lawsuit produced for the class, as set out in *Shutts II* and KRPC 1.5(a)(4). The district court noted that class counsel achieved a $3.45 million settlement for the class, which was a substantial benefit to the class.

The district court then examined the customary fee charged in the locality for similar services. See KRPC 1.5(a)(3). The district court cited to several Kansas district court cases and Oklahoma district court cases to support the fact that a one-third contingent fee is the customary fee awarded in oil and gas class action litigation cases for the locality. Although the district court did not cite to any appellate decisions which affirm a one-third contingent fee for oil and gas class action litigation cases, KRPC 1.5(a)(3) only requires that the district court look to the customary fee charged in its locality, which, in this case, the district court did and provided support for its conclusion.

Next, the district court reviewed the reputation, experience, and ability of class counsel. See KRPC 1.5(a)(7). The district court concluded that class counsel was well known and well respected, that class counsel has been lead or co-lead counsel on numerous class action cases, and that class counsel was superb. The district court relied on an affidavit filed by class counsel. Chesapeake did not contest this finding.

The district court examined the "time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly." See KRPC 1.5(a)(1). The district court reviewed class counsel's detailed billing statements in camera and determined that the "case took substantial time and labor to complete." The district court noted that the novelty and difficulty of the case and the skills required in the case were reflected in the mediation briefing and involved nongathering claims, prejudgment interest, and claims outside of the statute of limitations. At the hearing, the district court determined that this factor warranted additional compensation over what the lodestar amount would be.

The attorney fees in this case were awarded on the basis of a contingency fee from the common fund, not an hourly rate. Even though the number of hours spent are one factor to consider in determining the reasonableness of the fee, it is not the only factor. Chesapeake asserts that *Gigot* requires a district court to conduct a lodestar analysis as its basis for determining whether an attorney fee award is reasonable. However, in *Gigot*, where *no* time records were available, the Kansas Supreme Court indicated:

"[T]he district court did not perform a formal lodestar analysis and noted the difficulty in so doing because comprehensive time records were not kept by counsel. Although the lodestar factors, time and hourly rates, are two of the factors we require the district court to consider in arriving at a reasonable attorney fee award, our decision in *Shutts* does not preclude . . . the method employed by the district court in the present case. The district court considered the *Shutts* factors, including time and hourly rates." *Gigot*, 241 Kan. at 319.

Furthermore, our Supreme Court noted that "[t]he fact that the district court expressed the attorney fees awarded as a percentage of the common fund is not per se an abuse of discretion, absent a showing that *Shutts* factors were not considered by the court." *Gigot*, 241 Kan. at 319.

Even if we were to consider this case on the basis of a lodestar, or at least consider the lodestar as a check and balance against the contingency fee granted, Chesapeake admitted that in this type of case multipliers of anywhere from 2 to 5 are common, with a mean being 3. In this case, if one accepts the evidence presented by class counsel, which the district court did after review, the lodestar was $460,000. A mean multiplier of 3 would be significantly more than the district court awarded in this case. In fact, the district court noted that even a 2.5 multiplier would be more than was awarded based on the contingency common-fund approach.

Finally, the district court looked to KRPC 1.5(a)(8) and considered the contingent nature of the case to be relevant in that class counsel was required to forego any fees and had to finance the litigation with the possibility of no award.

Because the district court reviewed the eight factors set forth in KRPC 1.5(a) which are, in essence, the factors set forth in *Shutts II*, and it relied on substantial competent evidence as set out in

the record, it did not abuse its discretion in the amount it awarded for attorney fees.

## THE INCENTIVE AWARD

Often, as part of a settlement agreement in a class action lawsuit, the named class representative may be awarded some form of compensation in addition to that received by the unnamed class members. These payments are commonly referred to as "incentive awards." "Incentive awards are typically awards to class representatives for their often extensive involvement with a lawsuit." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003), *cert. denied* 540 U.S. 854 (2003).

Kansas appellate courts have not previously considered the propriety and parameters of incentive awards in class action lawsuits. Therefore, we look to federal decisions for guidance.

In this case, the class representative received an incentive award equal to 1% of the common fund. Chesapeake disagrees with the district court's order regarding the incentive award in two ways: (1) the award is too high, and (2) the award should not be based on a percentage of the common fund as a whole.

The consensus among the federal and state courts is that an appellate court should review a district court's order granting an incentive award under an abuse of discretion standard. See *Hadix*, 322 F.3d at 897; *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 410 (7th Cir. 2000), *cert. denied* 532 U.S. 1038 (2001); *In re Mego Financial Corp. Securities Litigation*, 213 F.3d 454, 463 (9th Cir. 2000); *Clark v. American Residential Services LLC*, 175 Cal. App. 4th 785, 804, 96 Cal. Rptr. 3d 441 (2009); *Flemming v. Barnwell Nursing*, 56 App. Div. 3d 162, 167, 865 N.Y.S.2d 706 (2008), *aff'd* 15 N.Y.3d 375, 912 N.Y.S.2d 504, 938 N.E.2d 937 (2010); *Ritter, Laber v. Koch Oil, Inc.*, 740 N.W.2d 67, 74 (N.D. 2007). We agree and adopt an abuse of discretion standard in Kansas for appellate review of a district court's findings regarding incentive awards.

Just as our Supreme Court in *Shutts II* set out standards for a court to consider in analyzing attorney fee awards, federal courts have set out three main factors to determine the appropriateness

of an incentive award to a class representative. Those factors include: (1) the actions the class representative took to protect the interests of the class; (2) the level of benefit that the class received from the class representative's actions; and (3) the quantity of time and effort the class representative spent in pursuing the litigation. *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003); *In re US Bancorp Litigation*, 291 F.3d 1035, 1038 (8th Cir. 2002); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

The district court relied on these factors in evaluating the incentive award in this case. Regarding the actions the class representative took to protect the class, the district court stated:

"[T]he Class Representative, Freebird, Inc., through its President, Kimberlee Hamilton, was especially vigilant in investigating royalty owner claims and securing competent Class Counsel (after representation was initially denied by another experienced Kansas gas class action firm). The Class Representative was thereafter actively and continuously involved in the discovery, mediation, and settlement process on behalf of the Class."

In addition, the district court pointed out that the class representative "initially sought legal counsel from [two other] firms but was turned down because they did not believe the case was big enough to invest the time and expenses to pursue it." Moreover, the district court indicated that while the class representative "may have recovered more of the damages years from now after trial and appeal, the risk existed that [the class representative] would recover less than what was offered to settle."

Finally, the class representative worked with class counsel throughout the discovery, mediation, and settlement proceedings. It was undisputed that the class representative spent up to 700 hours working on the case. But for the class representative's persistence and help, the class members would not have been able to collect damages from a $3.45 million common fund.

Chesapeake argues that incentive awards should be predicated primarily on documented hours spent in connection with the case and that this court should disallow any incentive award based upon a percentage of the common fund. To allow recovery on a percentage basis, Chesapeake argues, provides a disproportionate recovery to that of other class members and encourages individuals

to become professional plaintiffs. Chesapeake argues that the class representative's primary benefit should always align with the class, not conflict with it.

Given the factors approved by the federal courts for reviewing incentive awards, which we adopt as also appropriate in Kansas, we can find no reason to automatically deny incentive awards that are based upon a percentage of the common fund. We do not consider such awards as antithetical to the interests of the class. To the contrary, the class representative remains aligned with the interests of the class as a whole; the larger the class recovery, the larger the incentive award.

In addition, in this case, even if we were to use a lodestar analysis as an additional cross-check as to the reasonableness of the award, the award did not represent an unreasonable amount. The district court awarded 1% of the common fund to the class representative, which amounts to approximately $34,500. Based upon the 700 hours the class representative spent working on the lawsuit, the incentive award results in a reimbursement rate of approximately $50 per hour. This does not appear to be unreasonable given the importance of the class representative's contribution in this case.

We find that the district court did not abuse its discretion when it awarded 1% of the common fund, or $34,500, to the class representative.

Finding that Chesapeake had a full and meaningful opportunity to present its objections to the district court for consideration and finding no abuse of discretion in the district court's award of attorney fees and the incentive award payment, we affirm.

Affirmed.