NOT DESIGNATED FOR PUBLICATION

No. 118,421

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

NICOLE BRAND,
*Appellee*,

v.

PHARMACARE MANAGEMENT, INC.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed October 12, 2018.
Affirmed.

*Derek S. Casey* and *Eric B. Metz*, of Triplett Woolf Garretson LLC, of Wichita, for appellant.

*Aaron J. Good*, of Klenda Austerman, LLC, of Wichita, for appellee.

Before GREEN, P.J., PIERRON and BUSER, JJ.

PER CURIAM: Pharmacare Management, Inc. (Pharmacare) appeals from the trial court's award, ordering Nicole Brand to pay $18,834 in attorney fees for violating her employment noncompetition agreement. Pharmacare argues that the trial court abused its discretion by not awarding the entire $40,957.98 in attorney fees it requested. For reasons explained below, Pharmacare's arguments are unpersuasive. Accordingly, we affirm.

On June 11, 2012, Brand, a licensed pharmacist, obtained employment with Pharmacare. Pharmacare, which was in Wichita, Kansas, provided home infusion

1

pharmacy products and services, health insurance claims administration, reimbursement review services, third party claims administration, and home health services to patients.

The same day she started work, Brand signed Pharmacare's employee noncompetition agreement. Under the agreement, for one year after the termination of her employment at Pharmacare, whether that termination was voluntary or involuntary, Brand agreed she would not seek employment with any company (1) that was in competition with Pharmacare and (2) that was within a 250-mile radius of Wichita, Kansas. The noncompetition agreement also included the following provision about attorney fees:

> "In the event it should become necessary for Pharmacare to retain the services of an attorney (a) to enforce the terms of this Agreement, or (b) to appear in any proceeding seeking a declaration of the parties' rights under this Agreement, EMPLOYEE agrees to pay the cost of any legal proceedings and Pharmacare's reasonable attorneys' fees, including any attorneys' fees and costs incurred by Pharmacare as a result of appellate proceedings (regardless of the party initiating the appeal)."

On December 23, 2016, Brand quit her job at Pharmacare. When she quit, she told Pharmacare management she intended to work for Preston Pharmacy, which was also located in Wichita, Kansas.

On December 29, 2016, Pharmacare sent two letters. Pharmacare sent the first letter to Preston Pharmacy. In the letter, Pharmacare told Preston that it had a noncompetition agreement with Brand. It told Preston that it considered Preston a competitor. Moreover, it told Preston that if Preston employed Brand, that it would consider the act "tortious interference" with its noncompetition agreement. Pharmacare sent the second letter to Brand. This letter stated that her employment with Preston Pharmacy would violate her noncompetition agreement. It also told her that if she did not

2

comply with the noncompetition agreement, it would pursue attorney fees as provided in the agreement.

On January 25, 2017, Brand petitioned for a declaratory judgment against Pharmacare. Then, on February 6, 2017, Brand moved for a temporary injunction. In both filings, she argued the noncompetition agreement did not protect legitimate business interests, was overbroad, and was unreasonable.

On February 16, 2017, Pharmacare answered Brand's petition. Pharmacare denied that its noncompetition agreement with Brand was unenforceable. Pharmacare also sought a declaratory judgment against Brand, arguing that Brand had violated the noncompetition agreement. Alternatively, Pharmacare requested a temporary or permanent injunction, seeking to enforce the noncompetition agreement against Brand.

On February 24, 2017, the trial court held a hearing on the parties' competing temporary injunction motions. The trial court granted Pharmacare's motion for temporary injunction.

After the court entered the temporary injunction in Pharmacare's favor, it seems the parties began settlement negotiations. On June 9, 2017, the trial court entered a journal entry summarizing the parties' settlement agreement. Under the agreement, Brand consented to the entry of a permanent injunction enforcing the noncompetition agreement until February 24, 2018. Nevertheless, the settlement agreement specifically excluded the issue of attorney fees. Although Brand conceded that Pharmacare may recover reasonable attorney fees as stated in the noncompetition agreement, the parties decided to submit separate motions to the court regarding the meaning of reasonable attorney fees.

On July 25, 2017, Pharmacare moved to recover all the attorney fees and costs it had incurred while trying to enforce Brand's noncompetition agreement. In its motion,

Pharmacare first emphasized that Brand had filed the lawsuit to challenge the enforceability of the agreement. Pharmacare then emphasized that despite this, it had successfully obtained a temporary injunction and then a permanent injunction. Next, Pharmacare explained what its attorneys had done throughout the case. According to Pharmacare, its attorneys incurred the following reasonable fees: (1) $4,575 to enforce the noncompetition agreement before Brand filed her lawsuit; (2) "$13,569 to respond to [Brand's] petition, prepare a cross-motion for a temporary injunction, and develop discovery between the filing of [Brand's] petition and the commencement of discovery"; (3) $5,265 during discovery, with another $1,526.98 in costs for deposition transcripts; (4) $9,114.50 to prepare for the temporary injunction evidentiary hearing, appear at the evidentiary hearing, and "for post-[evidentiary] hearing matters"; (5) $3,550 for settlement negotiations plus $70.00 for a transcript of the court's February 24 ruling to prepare a journal entry; and (6) $3,257.50 to recover attorney fees and costs.

Thus, Pharmacare requested $39,361 in attorney fees and $1,596.98 in costs, or $40,957.98 total. Pharmacare argued that the burden shifted to Brand to establish that the fees and costs were unreasonable. To establish that it was entitled to $40,957.98, Pharmacare attached several exhibits to its motion outlining what its attorneys did, when its attorneys did it, and how much its attorneys charged during the case against Brand.

Brand responded that the amount of attorney fees that Pharmacare requested was unreasonable. Citing the Kansas Rules of Professional Conduct (KRPC) 1.5(a) (2018 Kan. S. Ct. R. 294), Brand argued that Pharmacare's requested attorney fees were "generally excessive given the relatively short duration of the case, the relatively simple single issue involved, and the parties['] agreed journal entry resolving the same." Brand challenged three specific requests for attorney fees: (1) fees for a second attorney to attend her deposition; (2) "fees for fees," i.e., fees for drafting the motion for attorney fees; and (3) fees for a "motion for expedited discovery and order granting motion," which Brand alleged were never filed in the case.

On August 25, 2017, the trial court held a hearing on the parties' motions. At the hearing, Pharmacare argued that Brand failed to establish that its requests for attorney fees were excessive. Pharmacare's counsel explained that it had drafted but not moved to expedite discovery. Yet, counsel further explained that because he and opposing counsel "work[ed] out an expedite[d] discovery plan," he did not have to file the motion. Counsel did not believe it was unreasonable to still ask for attorney fees for the unfiled motion. Counsel also thought that "double teaming," that is, having many attorneys working on Brand's case and being at her deposition, was reasonable given the time constraints. Next, counsel argued that caselaw supported awarding attorney fees for the time counsel spent on arguing why they deserve attorney fees. Last, counsel noted that it had sought to file a supplemental declaration requesting another $6,486 for the work he and other attorneys had done to argue that Pharmacare was entitled to attorney fees.

Brand responded that the attorney fees were unreasonable when considered all together. Her counsel described the "eight pages" of billing submitted by Pharmacare as "death by a thousand cuts." Counsel asserted that "$40,000 in bills over a relatively short span, for . . . relatively simple issues that were resolved ultimately by agreement of the parties, . . . is unreasonable . . . ." Thus, Brand requested that the court set a reasonable fee.

After hearing the parties' arguments, the trial court ordered Brand to pay attorney fees in the amount of $18,834. This figure came from combining the $13,569 spent "to respond to [Brand's] petition, prepare a cross-motion for a temporary injunction, and develop discovery between the filing of [Brand's] petition and the commencement of discovery" and the $5,265 spent during discovery. The trial court made its ruling through the following exchange with Pharmacare's counsel:

5

"[THE COURT: A]nalyzing the reasonableness of the fees . . . we look at the rules of professional conduct, the eight rules set forth in 1.5(a) and go through those. And I do find that these—that payment of the fees is reasonable. I'll order fees in the amount of 1,000—strike that—$18,834.

"MR. CASEY: I'm sorry, Your Honor, I misunderstood. May I ask where that figure comes from?

"THE COURT: I'm taking the amount of fees Pharmacare reasonably incurred in preparation of the motion for temporary injunction and to develop the discovery, then the amount necessarily incurred in the discovery of $5,265 and believe that that's the reasonable fees. And so you can check my math, make sure I added those right.

"MR. CASEY: So . . . you are excluding the pre-lawsuit attorneys' fees?

"THE COURT: Yes.

"MR. CASEY: Then the next category was lawsuit filed through discovery, were you excluding those, also, sir?

"THE COURT: Yeah, the only two . . . when I sit back and look at the case, the whole thing, I believe the $18,834 is a reasonable amount. And I came up with that by putting together the fees in paragraph 26 of the motion, the [$]13,569 and then the fees in paragraph 27, the $5,265 for the discovery.

"MR. CASEY: Okay. And then [$1,500] for the deposition transcripts and the other costs that we had?

"THE COURT: Just when I sat back and looked at this thing as a whole, I think that's a reasonable amount."

*Did the Trial Court Err in Awarding Attorney Fees?*

On appeal, the parties do not dispute that the employee noncompetition agreement entitles Pharmacare to reasonable attorney fees. Nor do the parties dispute the material facts of the case. Instead, Pharmacare argues that the trial court should have awarded it the entire $40,957.98 in attorney fees and costs it requested from Brand. Meanwhile, Brand responds that the trial court's award of $18,834 in attorney fees and costs was reasonable. Thus, Brand argues that this court should affirm the $18,834 award.

6

Pharmacare asserts that the trial court abused its discretion while awarding attorney fees in three ways. First, Pharmacare argues that once it provided detailed evidence of its attorney itemized billing, the burden shifted to Brand to prove that the fees were unreasonable. Pharmacare believes that Brand's general complaints about Pharmacare's billing did not constitute particularized objections to its fees. According to Pharmacare, this means that Brand failed to sustain her burden of proof, and the trial court should have granted its attorney fees request. Second, Pharmacare argues that the trial court abused its discretion because it did not consider KRPC 1.5(a). Third, Pharmacare argues that the trial court abused its discretion when it "den[ied] some of [its] request for fees and costs while allowing others without explanation." Based on these alleged errors, Pharmacare asks this court to reverse the trial court.

Brand counters that each of Pharmacare's arguments are unpersuasive. To begin with, Brand argues that Pharmacare's contention that she had to make particularized objections has no basis in law. Next, Brand argues that the trial court sufficiently considered KRPC 1.5(a). Last, Brand argues that Pharmacare's arguments actually involve whether the trial court made inadequate findings of fact. Because Pharmacare did not object to the trial court's inadequate fact-findings, Brand argues that Pharmacare has failed to preserve this argument on appeal.

*Applicable Law*

In *Wittig v. Westar Energy, Inc.*, 44 Kan. App. 2d 216, 227, 235 P.3d 535 (2010), this court explained our standard of review when considering the reasonableness of attorney fees awards:

> "In Kansas, attorney fees cannot be granted by a court in the absence of statutory authority or an agreement by the parties calling for an award. See *Rensenhouse v. Bauer*, 33 Kan. App. 2d 148, 150, 98 P.3d 668 (2004). . . . The interpretation and legal effect of a

7

written instrument is a matter of law over which this court exercises unlimited review. *Unrau*, 271 Kan. at 763. Regardless of the construction given a written contract by the district court, this court may construe a written contract and determine its legal effect.

"Nevertheless, once it is determined that the district court had authority under an agreement to grant attorney fees, the district court's decision is reviewed under an abuse of discretion standard. *Tyler v. Employers Mut. Cas. Co.*, 274 Kan. 227, 242, 49 P.3d 511 (2002). The district court has wide discretion to determine the amount and recipient of attorney fees. *In re Marriage of Burton*, 29 Kan. App. 2d 449, 454, 28 P.3d 427, *rev. denied* 272 Kan. 1418 (2001). An award of attorney fees will not be set aside on appeal when supported by substantial competent evidence. The district court abuses its discretion when no reasonable person would take the view adopted by the district court. *State v. Moses*, 280 Kan. 939, 945, 127 P.3d 330 (2006)."

Even when the parties have contract-based attorney fees, a trial court "must consider all of the KRPC 1.5(a) . . . factors to determine the reasonableness of attorney fees." 44 Kan. App. 2d 216, Syl. ¶ 7. KRPC 1.5(a) states:

"The factors to be considered in determining the reasonableness of a fee include the following:

(1)     the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2)     the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3)     the fee customarily charged in the locality for similar legal services;

(4)     the amount involved and the results obtained;

(5)     the time limitations imposed by the client or by the circumstances;

(6)     the nature and length of the professional relationship with the client;

(7)     the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8)     whether the fee is fixed or contingent."

8

*Particularized Objections*

Pharmacare asserts that once a party establishes that it is entitled to attorney fees, the opposing party must then make particularized objections why the requested attorney fees are unreasonable. To support its argument that an opposing party has the duty to make particularized objections, Pharmacare cites the following cases: (1) *United States v. Western States Mechanical Contractors*, 834 F.2d 1533 (10th Cir. 1987); (2) *Enterprise Trust & Bank v. Barney Ashner Homes, Inc.*, No. 106,588, 2013 WL 1876293 (Kan. App. 2013) (unpublished opinion); and (3) *Ross v. Rothstein*, No. 13-CV-2101-DDC-TJJ, 2016 WL 274878 (D. Kan. 2016) (unpublished opinion). Pharmacare argues that Brand made only generalized objections to its billing entries in support of its request for attorney fees. Although not entirely clear, it seems that Pharmacare believes that Brand needed to object to billing entry by billing entry, to sustain *her burden of proof* that its requested attorney fees were unreasonable. Thus, according to Pharmacare, the trial court had to award it the entire $40,957.98 in attorney fees and costs it requested.

Brand responds that the trial court did not abuse its discretion because Kansas law does not require an opposing party to make particularized objections. Brand points out that Pharmacare has relied on an opinion from the Tenth Circuit Court of Appeals originating from New Mexico, an unpublished opinion from the United States District Court of Kansas, and an unpublished opinion from this court. Brand argues that these opinions are not binding authority and that binding authority establishes that particularized objections are unnecessary.

Accordingly, this court must review the relevant caselaw the parties rely on. As a starting point, we must note that Brand's contention about Pharmacare not relying on binding authority is correct. Opinions from federal courts provide only persuasive authority. See *Sierra Club v. Moser*, 298 Kan. 22, 38, 310 P.3d 360 (2013) (holding that federal decisions do not control Kansas law). Thus, the two federal cases that Pharmacare

has cited—*Western States* and *Ross*—constitute merely persuasive authority. Furthermore, unpublished opinions from this court do not create precedent and may be cited only as persuasive authority. See Kansas Supreme Court Rule 7.04(g) (2018 Kan. S. Ct. R. 45). Thus, regardless of the content of the *Enterprise Trust* case, the *Enterprise Trust* case cannot bind this court.

Notwithstanding this problem, in the *Western States* case, subcontractors sued their prime contractor under the Miller Act, 40 U.S.C. §§ 270a-270d (1982). The subcontractors won at bench trial and the court awarded attorney fees, but some subcontractors appealed, arguing that the attorney fees awarded were inadequate. The Tenth Circuit Court of Appeals reversed one subcontractor's attorney fees award because the district court had applied the wrong standard while calculating the attorney fees below. The district court had applied the reasonable fee standard required under the federal fee shifting statute instead of awarding attorney fees consistent with the subcontractor and prime contractor's contract. 834 F.2d at 1547-48.

In *Enterprise Bank*, the parties had a contract entitling Enterprise to recover "reasonable costs," which included attorney fees. 2013 WL 1876293, at *3. Enterprise and defendants raised several arguments to this court. In the end, Enterprise was successful, and this court affirmed the trial court. 2013 WL 1876293, at *1. Before this court issued its opinion, however, Enterprise moved to recover attorney fees for fees incurred on appeal. Defendants did not respond that Enterprise's requested attorney fees were unreasonable. Instead, defendants opposed a specific billing entry and the amount of hours that Enterprise worked on the appeal, which it claimed was excessive. This court held that it had no "duty to peruse the itemized statements for reasonableness in the absence of particularized objections, as we might under a statute granting fees to a prevailing party to support litigation serving the public good in addition to purely private interests." 2013 WL 1876293, at *21. Thus, this court granted all of Enterprise's

10

requested attorney fees except for the one billing entry the defendants complained about. 2013 WL 1876293, at *21.

In *Ross*, a federal magistrate judge determined that defendant had a right to recover attorney fees and costs under the contract between defendant and plaintiff. The defendant's motion for attorney fees came before the Kansas District Court. Because the federal court had diversity jurisdiction, it applied Kansas law. The district court cited the *Enterprise* case as an example of the rules the court must apply when considering contract-based awards for attorney fees. In doing so, the district court quoted the "particularized objection" language from the *Enterprise* case quoted in the preceding paragraph. 2016 WL 274878, at *2. The district court did not reject any of the plaintiff's arguments based on a lack of particularized objections, and this was not an issue in the case.

Turning our focus back to Pharmacare's arguments, we can clearly see that Pharmacare's arguments are meritless. For starters, although Pharmacare has cited *Western States* for the proposition that Brand needed to make particularized objections to its requests for attorney fees, the Tenth Circuit Court of Appeals in *Western States* does not make such a holding. Instead, the *Western States* court simply held that when parties have a contract that allows for attorney fees, courts should determine the reasonableness of the requested attorney fees based on the parties' contract, not on the federal fee shifting statute. 834 F.2d at 1547-48. Thus, *Western States* does not support Pharmacare's "particularized objection" argument.

In her brief, Brand assumes that Pharmacare has cited *Western States* for the proposition that *its contract* with her required her to make particularized objections. Yet, in its brief, Pharmacare never alleges that it was its contract with Brand that required her to make particularized objections. Instead, Pharmacare just broadly alleges that Brand needed to make particularized objections. Further, its reference to *Western States* appears

11

in a string cite on page 11 in its brief, with no argument that Brand needed to make particularized objections because of the employee noncompetition agreement. In short, because Pharmacare did not make the argument Brand alleges it is making, this argument is not properly before our court. *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011) (holding that an issue not briefed by the appellant is deemed abandoned).

Even if the argument were properly before our court, however, as Brand points out in her brief, such an argument is incorrect. In *Western States*, for instance, the Tenth Circuit Court of Appeals held that "the trial court has discretion to adjust *or even deny a contractual award of fees if such an award could be inequitable or unreasonable*." (Emphasis added.) 834 F.2d at 1548. Also, in *Westar Energy, Inc. v. Wittig*, 44 Kan. App. 2d 182, 235 P.3d 515 (2010), this court considered the applicability of *Western States*. In the end, this court held that even when there were contract-based attorney fees, courts must consider the reasonableness of the attorney fees under KRPC 1.5(a). Stated another way, this court rejected the law outlined in *Western States*. 44 Kan. App. 2d at 209-10.

Returning to the *Ross* decision, we note that it cites to this court's unpublished opinion in *Enterprise* for the proposition that particularized objections are required when challenging attorney fees. Nevertheless, *Ross* made no additional analysis concerning this proposition. Thus, it does not create new persuasive authority. Instead, it merely rehashes old persuasive authority. As a result, the *Ross* case is of no consequence.

Accordingly, the *Enterprise* case is the only persuasive authority holding that a party must make particularized objections to attorney fees that Pharmacare has cited. A review of *Enterprise*, however, establishes that when this court granted Enterprise's requests for attorney fees against defendants based on their lack of particularized objections, it cited no Kansas authority to support its holding that defendants had to make particularized objections. 2013 WL 1876293, at *21. Indeed, the only authority the

12

*Enterprise* court cited was *Hensley v. Eckerhart*, 461 U.S. 424, 433-34, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983), for the proposition that "[o]nce a party prevails on a federal civil rights claim, 'it remains for the district court to determine what [attorney] fee is "reasonable"'" under 42 U.S.C. § 1988." 2013 WL 1876293, at *21.

But federal civil rights attorney fees are not contract-based attorney fees. Thus, the reliance on federal law, especially federal law concerning a federal civil rights claim, seems misplaced. Moreover, even the *Hensley* case did not hold that a party must make particularized objections to an opposing party's request for attorney fees. Therefore, in actuality, the *Enterprise* court does not cite any law to support its "particularized objection" holding.

Additionally, Kansas has settled law on how to determine the reasonableness of contract-based attorney fees. As addressed earlier, once the court determines that a party is entitled to attorney fees, the trial court has *wide discretion* in determining the amount and recipient of attorney fees. *Wittig*, 44 Kan. App. 2d at 228. This is partly because the trial court is an expert in the area of attorney fees and "can draw on and apply its own knowledge and expertise in determining their value." *Freebird, Inc. v. Cimarex Energy Co.*, 46 Kan. App. 2d 631, 639-40, 264 P.3d 500 (2011). Above all, in *Westar*, this court addressed what party had the burden of proof in determining the reasonableness of contract-based attorney fees. The *Westar* court explicitly held that "the burden to prove the reasonableness of the fees and expenses requested is *upon the party making the request*." (Emphasis added.) 44 Kan. App. 2d at 210. The *Westar* court never mentioned a burden shift or the need for the party opposing the fees to make particularized objections.

With *Westar* as precedent, it is readily apparent that Kansas authority supports that Pharmacare, not Brand, must establish the reasonableness of the requested attorney fees. Indeed, under Kansas authority, the trial court would have the discretion to determine the

13

reasonableness of Pharmacare's requested attorney fees even if Brand had made no objection to Pharmacare's attorney fees.

Moreover, the *Enterprise* case involved the granting of appellate attorney fees. Therefore, the *Enterprise* court had the discretion to award fees as it believed was reasonable. This court is not in the same position. This court is bound by the standard for reviewing a trial court's award of attorney fees. Again, that standard is an abuse of discretion, meaning this court will not reverse the trial court unless no reasonable person could take the view of the trial court. *Wittig*, 44 Kan. App. 2d at 228; see *Tyler v. Employers Mut. Cas. Co.*, 274 Kan. 227, 242, 49 P.3d 511 (2002). Accordingly, the standard of review is very deferential to the trial court.

Thus, to summarize, although Pharmacare cites three cases to support its argument that Brand had to make particularized objections to its request for attorney fees—*Western States*, *Enterprise*, *Ross*—only the *Enterprise* case supports its argument that Brand had to make particularized objections. Yet, as discussed earlier, Pharmacare's reliance on *Enterprise* affords no sound basis for requiring a party to make a particularized objection when challenging the amount of attorney fees to be awarded. A closer review of the *Enterprise* case establishes the following:  (1) that no law supported the *Enterprise* court's "particularized objection" holding; (2) that the *Enterprise* case is distinguishable because it involved the award of appellate attorney fees; and (3) that Kansas law provides (a) that the trial court has wide discretion in granting attorney fees and (b) that the burden rests on the party requesting attorney fees. Thus, Pharmacare's reliance on *Enterprise* is misplaced.

Last, it is worth repeating that even though Pharmacare challenges the adequacy of Brand's objections, Brand did object to Pharmacare's requests for attorney fees. Once again, Brand broadly objected that the fees seemed excessive given that the case was short in duration, was settled by a journal entry, and involved one simple issue. Brand

14

specifically objected to billing entries that involved a second attorney attending her deposition, fees for fees, and a motion that was never filed. At the hearing on the motion, Brand repeated these arguments, and mentioned that Pharmacare's request for over $40,000 seemed to be "death by a thousand cuts." Thus, despite Pharmacare's arguments to the contrary, Brand provided the trial court with both broad and specific reasons why Pharmacare's requested attorney fees may not be completely reasonable.

*Insufficient Fact-Findings*

Both of Pharmacare's remaining arguments involve the trial court's allegedly insufficient findings of fact to support its conclusions of law. First, Pharmacare argues that when the trial court ruled on its attorney fees request, it did not consider KRPC 1.5(a). According to Pharmacare, the trial court made an error of law because Kansas rules require the court to consider a party's attorney fees request under the KRPC 1.5(a) factors. It concludes that the trial court did not consider KRPC 1.5(a) because it did not engage in an on-the-record analysis detailing its findings as to each KRPC 1.5(a) factor. Pharmacare's next argument is really just a continuation of its previous argument. Pharmacare complains that the trial court did not explain why it was granting attorney fees about the work related to responding to Brand's petition, preparing a cross-motion for temporary injunction, and developing and completing discovery while denying attorney fees in all other respects. When going through each KRPC 1.5(a) factor, Pharmacare argues that no reasonable fact-finder would have reached the attorney fees award that the trial court reached.

To review, even though the trial court did not engage in a factor-by-factor review of KRPC 1.5(a), the trial court expressly mentioned KRPC 1.5(a) before making its findings and rulings. Indeed, the trial court stated that it had gone "through" the KRPC 1.5(a) factors to determine what attorney fees were reasonable. Simply put, no reason

exists to doubt the trial court's contention that it considered KRPC 1.5(a) while making its attorney fees decision.

Next, to the extent that Pharmacare complains about the sufficiency of the trial court's factual findings, Pharmacare failed to preserve this argument for appeal. This is because Pharmacare had a duty to ensure that the trial court made proper factual findings on the record. Thus, as Brand argues in her brief, Pharmacare's "arguments are barred because it did not . . . object to the district court's perceived inadequate [findings of] facts and conclusions."

K.S.A. 2017 Supp. 60-252(a)(1) states:

"*In general*. In an action tried on the facts without a jury or with an advisory jury or upon entering summary judgment, the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of evidence, or may appear in an opinion or a memorandum of decision filed by the court."

Likewise, Supreme Court Rule 165 (2018 Kan. S. Ct. R. 215) states that the trial court must make adequate findings of fact and conclusions of law regarding all matters. K.S.A. 2017 Supp. 60-252(b) states that a party may move the trial court to make additional fact-findings within 28 days of the trial court's filing of journal entry of judgment.

Based on Rule 165, our Supreme Court has consistently held that parties must object to inadequate findings of facts and conclusions of law "to give the trial court an opportunity to correct them, and in an absence of an objection, omissions in findings will not be considered on appeal." *Dragon v. Vanguard Industries, Inc.*, 282 Kan. 349, 356, 144 P.3d 1279 (2006); see *In re Adoption of T.M.M.H.*, 307 Kan. 902, Syl. ¶ 10, 416 P.3d 999 (2018); *McIntyre v. State*, 305 Kan. 616, 618, 385 P.3d 930 (2016). When a party

16

does not object, an appellate court will presume all the facts necessary to support the trial court's judgment exist. *Dragon*, 282 Kan. at 356.

Although Pharmacare asked the trial court for clarification on which billing entries it was not granting, it did not object to the trial court's decision based on a lack of factual findings. It also never moved for additional findings under K.S.A. 2017 Supp. 60-252(b). Even so, Pharmacare's last two arguments on appeal hinge on the trial court's insufficient fact-findings for its attorney fees award. Pharmacare complains about the trial court not going through each KRPC 1.5(a) factor. And it complains that the trial court "abused its discretion by arbitrarily and unreasonably denying some of [its] request for fees and costs while allowing others without explanation." Nevertheless, by not objecting to the trial court's fact-findings below, Pharmacare created an argument for itself on appeal. It may not sandbag the trial court by remaining silent about the trial court's fact-findings and then argue on appeal about the trial court's lack of adequate fact-findings.

Nevertheless, Pharmacare contends that its counsel objected to the trial court's fact-findings below. Pharmacare asserts that its counsel's request for clarification on which billing entries were being awarded in the trial court's decision constituted an objection where the trial court "made additional findings pursuant to K.S.A. 60-252(a) [*sic*] and . . . Rule 165(a)." Yet, as already noted, counsel sought only to know what exact attorney fees the court was awarding, without ever asking for more specific fact-findings. Therefore, Pharmacare's contention that it objected as required under K.S.A. 2017 Supp. 60-252 and Rule 165 is misleading and disingenuous.

Second, Pharmacare contends that it could not have moved for additional findings under K.S.A. 2017 Supp. 60-252(b) because "[t]his additional litigation would have been pointless" and because the issue was not "ripe for appeal." But this argument is groundless. K.S.A. 2017 Supp. 60-252(b) allows parties to move for additional findings. Thus, it was entirely possible for Pharmacare to make the arguments it currently makes

17

on appeal before filing this appeal. Moreover, our Supreme Court clearly places the burden on the parties to object to insufficient fact-findings below; thus, parties should not raise this insufficient fact-finding issue for the first time on appeal. *Dragon*, 282 Kan. at 356. Consequently, not only was the issue ripe, Pharmacare needed to move for additional findings under K.S.A. 2017 Supp. 60-252(b) to properly preserve this argument for appeal.

In conclusion, none of Pharmacare's arguments why this court should reverse the trial court are persuasive. Simply put, Pharmacare failed to challenge the trial court's fact-findings below. By failing to challenge the trial court's fact-findings below, Pharmacare violated Rule 165, which requires a party to object to a trial court's inadequate findings of fact and conclusions of law to preserve those issues on appeal. *In re Adoption of T.M.M.H.*, 307 Kan. at 918; *Dragon*, 282 Kan. at 356. Additionally, by raising its complaints about the trial court's fact-findings for the first time on appeal without explaining why it may make such arguments for the first time on appeal, Pharmacare has also violated Rule 6.02(a)(5) (2018 Kan. S. Ct. R. 34).

Thus, in accordance with our Supreme Court precedent, we presume that the trial court's fact-findings to support its decision to award Pharmacare $18,834 in attorney fees was reasonable and supported by substantial competent evidence. See *In re Adoption of T.M.M.H.*, 307 Kan. at 918; *Dragon*, 282 Kan. at 356. Under this presumption, Pharmacare's argument that the trial court abused its discretion because it did not engage in a step-by-step fact-finding detailing its reasoning for granting its specific attorney fees award as to each KRPC 1.5(a) factor necessarily fails because we presume that the trial court "found all facts necessary to support its judgment." *Dragon*, 282 Kan. at 356.

Affirmed.